# GLOBE REFINING COMPANY *v.* LANDA COTTON OIL COMPANY.

## ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF TEXAS.

No. 241. Submitted April 16, 1903.—Decided June 1, 1903.

In case of a breach of contract a person can only be held responsible for such consequences as may be reasonably supposed to be in contemplation of the parties at the time of making the contract, and mere notice to a seller of some interest or probable action of the buyer is not enough necessarily and as matter of law to charge the seller with special damage on that account if he fails to deliver the goods.

Where the amount of damages for breach of contract is made to appear to be more than $2000, the judge of the Circuit Court may, on exceptions properly taken, try the question of jurisdiction separately and if the damages have been purposely and fraudulently magnified he may dismiss the cause. The grounds upon which he bases his decision are reviewable in this court.

THE case is stated in the opinion of the court.

Submitted by *Mr. C. W. Odgen* and *Mr. J. D. Guinn* for plaintiff in error.

No appearance for defendant in error.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an action of contract brought by the plaintiff in error,

a Kentucky corporation, against the defendant in error, a Texas corporation, for breach of a contract to sell and deliver crude oil. The defendant excepted to certain allegations of damage, and pleaded that the damages had been claimed and magnified fraudulently for the purpose of giving the United States Circuit Court jurisdiction, when in truth they were less than two thousand dollars. The judge sustained the exceptions. He also tried the question of jurisdiction before hearing the merits, refused the plaintiff a jury, found that the plea was sustained and dismissed the cause. The plaintiff excepted to all the rulings and action of the court, and brings the case here by writ of error. If the rulings and findings were right there is no question that the judge was right in dismissing the suit, *North American Transportation & Trading Co.* v. *Morrison*, 178 U. S. 262, 267, but the grounds upon which he went are reëxaminable here. *Wetmore* v. *Rymer*, 169 U. S. 115.

The contract was made through a broker, it would seem by writing, and at all events was admitted to be correctly stated in the following letter:

"Dallas, Texas, 7/30/97.

"Landa Oil Company, New Braunfels, Texas.

"Gentlemen: Referring to the exchange of our telegrams to-day, we have sold for your account to the Globe Refining Company, Louisville, Kentucky, ten (10) tanks prime crude C/S oil at the price of 15¾ cents per gallon of 7½ pounds f. o. b. buyers' tank at your mill. Weights and quality guaranteed.

"Terms: Sight draft without exchange b/ldg. attached. Sellers paying commission.

"Shipment: Part last half August and balance first half September. Shipping instructions to be furnished by the Globe Refining Company.

"Yours truly,

"THOMAS & GREEN, *as Broker.*"

Having this contract before us, we proceed to consider the allegations of special damage over and above the difference between the contract price of the oil and the price at the time of the breach, which was the measure adopted by the judge. These

allegations must be read with care, for it is obvious that the pleader has gone as far as he dared to go and to the verge of anything that could be justified under the contract, if not beyond.

It is alleged that it was agreed and understood that the plaintiff would send its tank cars to the defendant's mills, and that the defendant promptly would fill them with oil, (so far simply following the contract,) and that the plaintiff sent tanks. "In order to do this the plaintiff was under the necessity of obligating itself unconditionally to the railroad company (and of which the defendant had notice) to pay to it for the transportation of the cars from said Louisville to said New Braunfels in the sum of nine hundred dollars," which sum plaintiff had to pay, "and was incurred as an advancement on said oil contract." This is the first item. The last words quoted mean only that the sum paid would have been allowed by the railroad as part payment of the return charges had the tanks been filled and sent back over the same road.

Next it is alleged that the defendant, contemplating a breach of the contract, caused the plaintiff to send its cars a thousand miles, at a cost of a thousand dollars; that defendant cancelled its contract on the second of September, but did not notify the plaintiff until the fourteenth, when, if the plaintiff had known of the cancellation, it would have been supplying itself from other sources; that plaintiff (no doubt defendant is meant) did so wilfully and maliciously, causing an unnecessary loss of two thousand dollars.

Next it is alleged that by reason of the breach of contract and want of notice plaintiff lost the use of its tanks for thirty days—a loss estimated at seven hundred dollars more. Next it is alleged that the plaintiff had arranged with its own customers to furnish the oil in question within a certain time, which contemplated sharp compliance with the contract by the defendant, "all of which facts, as above stated, were well known to the defendant, and defendant had contracted to that end with the plaintiff." This item is put at seven hundred and forty dollars, with a thousand dollars more for loss of customers, credit and reputation. Finally, at the end of the petition it is alleged generally that it was known to defendant and in contemplation of the con-

tract that plaintiff would have to send tanks at great expense from distant points, and that plaintiff " was required to pay additional freight in order to rearrange the destination of the various tanks and other points." Then it is alleged that, by reason of the defendant's breach, the plaintiff had to pay three hundred and fifty dollars additional freight.

Whatever may be the scope of the allegations which we have quoted, it will be seen that none of the items was contemplated expressly by the words of the bargain. Those words are before us in writing, and go no further than to contemplate that when the deliveries were to take place the buyer's tanks should be at the defendant's mill. Under such circumstances the question is suggested how far the express terms of a writing, admitted to be complete, can be enlarged by averment and oral evidence, and if they can be enlarged in that way, what averments are sufficient. When a man commits a tort he incurs by force of the law a liability to damages, measured by certain rules. When a man makes a contract he incurs by force of the law a liability to damages, unless a certain promised event comes to pass. But unlike the case of torts, as the contract is by mutual consent, the parties themselves, expressly or by implication, fix the rule by which the damages are to be measured. The old law seems to have regarded it as technically in the election of the promisor to perform or to pay damages. *Bromage* v. *Genning*, 1 Roll. R. 368; *Hulbert* v. *Hart*, 1 Vern. 133. It is true that as people when contracting contemplate performance, not breach, they commonly say little or nothing as to what shall happen in the latter event, and the common rules have been worked out by common sense, which has established what the parties probably would have said if they had spoken about the matter. But a man never can be absolutely certain of performing any contract when the time of performance arrives, and in many cases he obviously is taking the risk of an event which is wholly or to an appreciable extent beyond his control. The extent of liability in such cases is likely to be within his contemplation, and whether it is or not, should be worked out on terms which it fairly may be presumed he would have assented to if they had been presented to his mind. For instance,

in the present case the defendant's mill and all its oil might have been burned before the time came for delivery. Such a misfortune would not have been an excuse, although probably it would have prevented performance of the contract. If a contract is broken the measure of damages generally is the same, whatever the cause of the breach. We have to consider therefore what the plaintiff would have been entitled to recover in that case, and that depends on what liability the defendant fairly may be supposed to have assumed consciously, or to have warranted the plaintiff reasonably to suppose that it assumed, when the contract was made.

This point of view is taken by implication in the rule that "a person can only be held to be responsible for such consequences as may be reasonably supposed to be in the contemplation of the parties at the time of making the contract." *Grébert-Borgnis* v. *Nugent*, 15 Q. B. D. 85, 92; *Horne* v. *Midland Ry. Co.*, L. R. 7 C. P. 583, 591; *Hadley* v. *Baxendale*, 9 Exch. 341, 354; *Western Union Telegraph Co.* v. *Hall*, 124 U. S. 444, 456; *Howard* v. *Stillwell & Bierce Manufacturing Co.*, 139 U. S. 199, 206; *Primrose* v. *Western Union Telegraph Co.*, 154 U. S. 1, 32. The suggestion thrown out by Bramwell, B., in *Gee* v. *Lancashire & Yorkshire Ry. Co.*, 6 H. & N. 211, 218, that perhaps notice after the contract was made and before breach would be enough, is not accepted by the later decisions. See further *Hydraulic Engineering Co.* v. *McHaffie*, 4 Q. B. D. 670, 674, 676. The consequences must be contemplated at the time of the making of the contract.

The question arises then, what is sufficient to show that the consequences were in contemplation of the parties in the sense of the vendor taking the risk? It has been held that it may be proved by oral evidence when the contract is in writing. *Messmore* v. *New York Shot & Lead Co.*, 40 N. Y. 422. See *Sawdon* v. *Andrew*, 30 Law Times, N. S., 23. But, in the language quoted, with seeming approbation, by Blackburn, J., from Mayne on Damages, 2d ed. 10, in *Elbinger Actien-Gesellschaft* v. *Armstrong*, L. R. 9 Q. B. 473, 478, "it may be asked, with great deference, whether the mere fact of such consequences being communicated to the other party will be sufficient, with-

out going on to show that he was told that he would be answer-able for them, and consented to undertake such a liability?" Mr. Justice Willes answered this question, so far as it was in his power, in *British Columbia Saw-Mill Co.* v. *Nettleship*, L. R. 3 C. P. 499, 508: "I am disposed to take the narrow view, that one of two contracting parties ought not to be allowed to obtain an advantage which he has not paid for. . . . If [a liability for the full profits that might be made by machinery which the defendant was transporting, if the plaintiff's trade should prove successful and without a rival] had been presented to the mind of the ship-owner at the time of making the contract, as the basis upon which he was contracting, he would at once have rejected it. And, though he knew from the shippers the use they intended to make of the articles, it could not be contended that the mere fact of knowledge, without more, would be a reason for imposing upon him a greater degree of liability than would otherwise have been cast upon him. To my mind, that leads to the inevitable conclusion that the mere fact of knowledge cannot increase the liability. The knowledge must be brought home to the party sought to be charged, under such circumstances that he must know that the person he contracts with reasonably believes that he accepts the contract with the special condition attached to it." The last words are quoted and reaffirmed by the same judge in *Horne* v. *Midland Ry. Co.*, L. R. 7 C. P. 583, 591; *S. C.*, L. R. 8 C. P. 131. See also Benjamin, Sale, 6th Am. ed. § 872.

It may be said with safety that mere notice to a seller of some interest or probable action of the buyer is not enough necessarily and as matter of law to charge the seller with special damage on that account if he fails to deliver the goods. With that established we recur to the allegations. With regard to the first it is obvious that the plaintiff was free to bring its tanks from where it liked—a thousand miles away or an adjoining yard—so far as the contract was concerned. The allegation hardly amounts to saying that the defendant had notice that the plaintiff was likely to send its cars from a distance. It is not alleged that the defendant had notice that the plaintiff had to bind itself to pay nine hundred dollars, at the time when the

contract was made, and it nowhere is alleged that the defen.. ant assumed any liability in respect of this uncertain element of charge. The same observations may be made with regard to the claim for loss of use of the tanks and to the final allegations as to sending the tanks from distant points. It is true that this last was alleged to have been in contemplation of the contract, if we give the plaintiff the benefit of the doubt in construing a somewhat confused sentence. But having the contract before us we can see that this ambiguous expression cannot be taken to mean more than notice, and notice of a fact which would depend upon the accidents of the future.

It is to be said further with regard to the foregoing items that they were the expenses which the plaintiff was willing to incur for performance. If it had received the oil these were deductions from any profit which the plaintiff would have made. But if it gets the difference between the contract price and the market price it gets what represents the value of the oil in its hands, and to allow these items in addition would be making the defendant pay twice for the same thing.

It must not be forgotten that we are dealing with pleadings, not evidence, and with pleadings which, as we have said, evidently put the plaintiff's case as high as it possibly can be put. There are no inferences to be drawn, and therefore cases like *Hammond* v. *Bussey*, 20 Q. B. D. 79, do not apply. It is a simple question of allegations which, by declining to amend, the plaintiff has admitted that it cannot reinforce. This consideration applies with special force to the attempt to hold the defendant liable for the breach of the plaintiff's contract with third persons. The allegation is that the fact that the plaintiff had contracts over was well known to the defendant, and that "defendant had contracted to that end with the plaintiff." Whether, if we were sitting as a jury, this would warrant an inference that the defendant assumed an additional liability, we need not consider. It is enough to say that it does not allege the conclusion of fact so definitely that it must be assumed to be true. With the contract before us it is in a high degree improbable that any such conclusion could have been made good.

The only other allegation needing to be dealt with is that

the defendant maliciously caused the plaintiff to send the tanks a thousand miles, contemplating a breach of its contract. So far as this item has not been answered by what has been said, it is necessary only to add a few words. The fact alleged has no relation to the time of the contract. Therefore it cannot affect the damages, the measure of which was fixed at that time. The motive for the breach commonly is immaterial in an action on the contract. *Grand Tower Co.* v. *Phillips*, 23 Wall. 471, 480 ; Wood's Mayne on Damages, § 45 ; 2 Sedgwick, Damages, 8th ed. § 603. It is in this case. Whether under any circumstances it might give rise to an action of tort is not material here. See *Emmons* v. *Alvord*, 177 Massachusetts, 466, 470.

The allowance of the exceptions made the trial of the plea superfluous. If the question of fact was to be tried as to whether the amount of damages that fairly could be claimed was sufficient to give the court jurisdiction, the court had authority to try it. *Wetmore* v. *Rymer*, 169 U. S. 115, 121 ; Act of March 3, 1875, c. 137, § 5, 18 Stat. 472. In coming to his conclusion, apart from what was apparent on the face of the pleadings, the judge no doubt was influenced largely by a letter from the plaintiff to the defendant, enclosing an itemized bill for one thousand and twenty-one dollars and twenty-eight cents. This letter suggested no further claim except for " any additional mileage we may have to pay." Of course, if the judge accepted the plaintiff's own view of its case as expressed here, the pretence of jurisdiction was at an end. Some attempt was made to make out this was an offer of compromise, and inadmissible. But the letter did not purport to be anything of the sort, it was an out and out adverse demand.

*Judgment affirmed.*