## SANDUSKY CEMENT CO. v. A. R. HAMILTON & CO.

(Circuit Court of Appeals, Sixth Circuit.   March 16, 1923.)

No. 3741.

1. **Trial ⊂⇒312(3)—Supplementary instructions, without presence of counsel for either party, nor opportunity to object, improper.**

The giving of supplementary instructions to a jury after its retirement, in the absence of counsel, without affording them an opportunity to be present or to make timely objection, is not only error, but is a dangerous practice, calculated to cause a miscarriage of justice, and ought to find no favor with a reviewing court.

2. **Appeal and error ⊂⇒1170(6)—Technical errors, not prejudicial, disregarded.**

Under Judicial Code, § 269, as amended by Act Feb. 26, 1919 (Comp. St. Ann. Supp. 1919, § 1246), providing that technical errors, defects or exceptions not affecting the substantial rights of the parties should not be ground for reversal, the unauthorized and improper action of the trial court in giving supplementary instructions to a jury, in the absence of counsel for the parties, is not ground for reversal, where the instruction properly stated the law, and was but a repetition in substance of other instructions previously given.

3. **Sales ⊂⇒151—Sale by owner of coal mines of part of his mines held not to affect purchaser of coal, whose proportion of coal delivered was unaffected thereby.**

Where defendant, a coal broker, contracted to sell and deliver to plaintiff a stipulated quantity of coal per month, or, if delivery of such quantity should be impossible by causes beyond the seller's control, then to deliver that proportion of such quantity which the tonnage actually produced and shipped would bear to its total coal contracts, *held*, that defendant had the right to enter into contracts reasonably proportionate to the capacity of all its mines, so that the sale by the company from whom defendant obtained the coal of two of its four mines could have no bearing on plaintiff's right to damages for insufficient delivery, where the capacity of the two mines aggregated more than defendant's total coal contracts, and had the two mines sold been retained, and their capacity contracted, the proportion delivered to plaintiff would have been unchanged.

4. **Sales ⊂⇒416(2)—Evidence of injury caused by shutting down plant properly excluded, as not contemplated by contract for sale of coal.**

In an action for damages for breach of contract for the sale of coal, the exclusion of evidence tending to prove special damages by reason of the enforced closing of plaintiff's plant for lack of fuel was proper, where there was nothing in the contract to indicate that either party at the time of the contract contemplated that the natural and proximate result of nondelivery would cause a closing down of plaintiff's plant.

5. **Sales ⊂⇒151—Instruction in action for damages held not erroneous.**

In an action for damages for nondelivery of agreed quantities of coal, under a sale contract which stipulated that if, for causes beyond the control of the seller, delivery of the full quantity should be impossible, then delivery should be prorated among seller's customers, *held*, that an instruction that the defendant had a right to renew a contract with one of its old and regular customers was not erroneous; defendant being under no obligations to discriminate against its old customers, and the renewal contract in fact being for a less quantity of coal, thus increasing the pro rata amount that defendant received to the latter's advantage.

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

287 F.—39

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Action by the Sandusky Cement Company for damages for breach of sale contract against A. R. Hamilton & Co., a corporation, in which the defendant counterclaimed for the contract price of coal delivered. From a judgment for defendant on its counterclaim, plaintiff brings error. Affirmed.

See, also, 273 Fed. 596.

The Sandusky Cement Company brought action for damages for breach of contract. By the terms of this contract, A. R. Hamilton & Co., the defendant agreed to sell and deliver to the plaintiff, at a price stipulated, 5,000 tons per month of Jamison Farmington slack coal during the period beginning April 1, 1920, and ending November 30, 1920, subject to strikes or combination of workmen, accidents, labor shortage, car shortage, and all causes beyond the control of the seller which may result in total or partial suspension of the mines. In case of reduction in the amount of coal produced at the mines or in shipment thereof because of car shortage or other causes mentioned, it was agreed that the seller would discharge its full obligation by delivering each month, coal in proportion of the tonnage actually produced and shipped from its mines to the total tonnage of all of its coal contracts. It was further provided that each month's shipment should be treated as a separate and distinct contract.

The defendant, a Pennsylvania corporation, does not own or operate any coal mine, but is a coal broker dealing generally in the coal market. On the same day the defendant entered into this contract with plaintiff, it made a similar contract for the delivery of this coal with the Jamison Coal & Coke Company. The court held that the defendant was entitled to make the same defenses as the mine owner could make if the contract had been made directly with it. The defendant failed to deliver the amount of coal named in the contract in any one month during the period covered thereby and at the end of that term, November 30, 1920, it had delivered, in the aggregate, but 15,012 tons. At the time these contracts were made the Jamison Coal & Coke Company was the owner of four mines. During the term of this contract it sold mines Nos. 7 and 10. The mines retained, Nos. 8 and 9, had a normal capacity of 40.000 tons per month. Its contracts for the sale and delivery of coal, made before and subsequent to this contract with plaintiff, amounted to about 32,000 tons per month. The defendant claims it was prevented from shipping the capacity of these mines by car shortage, embargoes, and like causes beyond its control; that the plaintiff received, in each month, the full proportion of coal to which it was entitled; that in the months of September, October, and November defendant shipped to plaintiff 2,743 tons of coal in excess of plaintiff's proper percentage or proportions of the production of the mines, and that this extra amount of coal was shipped to plaintiff in pursuance of a contract that plaintiff would accept the same in settlement of the claim made by it; that it had not received its full proportion in April, May and June.

The defendant, in its cross-petition, averred that there was due it from the plaintiff $23,874.50 for coal sold and delivered to plaintiff under this contract and prayed judgment accordingly. The plaintiff admitted this indebtedness and the cause proceeded to trial upon the issue as to damages. The jury allowed the plaintiff $6,104.41 as its damages to be credited upon the amount due from it to the defendant, leaving a net balance, including interest, of $18,128.44 for which judgment was entered against the plaintiff and in favor of the defendant.

While the jury was deliberating, it sent a written communication to the trial court reading as follows: "There seems to be a division of the jury over your instructions on this point, viz.: Is the Hamilton Company liable under this contract in any one month more than the pro rata share?" At the time this communication reached the court neither of the parties or their counsel were present. The court was then engaged in the trial

of another cause and, without giving counsel an opportunity to be present, sent to the jury the following answer in writing: "It is not liable in any one month for a greater amount than the amount undelivered in that month. Nor is it liable on account of that undelivered portion than the amount of the pro rata share which you may find plaintiff should have had but did not get."

A. C. Dustin, of Cleveland, Ohio (Dustin, McKeehan, Merrick, Arter & Stewart, of Cleveland, Ohio, and Fred J. Perkins, of Freeport, Ohio, on the brief), for plaintiff in error.

Wm. L. Day, of Cleveland, Ohio (Joseph R. Conrad, of Pittsburgh, Pa., and Day, Day & Wilkin, of Cleveland, Ohio, on the brief), for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge (after stating the facts as above). It is insisted on the part of plaintiff in error that the trial court erred to its prejudice in giving these supplementary instructions in the absence of counsel.

[1, 2] The conclusion reached by the Supreme Court in Fillippon v. Albion Vein Slate Co., 250 U. S. 76, 81, 39 Sup. Ct. 435, 63 L. Ed. 853, and cases there cited, make it unnecessary to discuss this question in detail. It is sufficient to say that it is not only error to instruct a jury in the absence of counsel, and without affording them an opportunity to be present or to make timely objection to the instruction, but it is also a dangerous practice, calculated to cause a miscarriage of justice, and ought to find no favor with a reviewing court.

It is insisted, however, that this error was not prejudicial, that the charge as given was correct, and that under the provisions of section 269 of the Judicial Code as amended February 26, 1919 (U. S. Compiled Statutes, 1919 Supplement, volume 1, § 1246), this court has no authority to reverse a judgment for technical errors, defects or exceptions which do not affect the substantial rights of the parties. This section of the Judicial Code as amended now reads, in part:

"* * * On the hearing of any appeal, certiorari, writ of error, or motion for new trial, in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties."

This section was amended prior to the decision in the Fillippon Case, but it could not apply to that case for the reason that the supplementary charge as given was prejudicial. It is not claimed on the part of plaintiff in error that this supplementary charge, given in this case in the absence of counsel, is, in and of itself, erroneous, but it is insisted that it is so connected with and related to the part of the general charge in reference to the sale of mines Nos. 7 and 10, which plaintiff claims is erroneous, that the court should consider it in connection therewith.

A careful examination of the supplementary charge, given in the absence of counsel, fails to sustain the plaintiff's contention that it has relation to that particular part of the general charge. It is a specific charge in reference to a specific issue and is a clear and correct

statement of the law applicable thereto. There is nothing in this supplementary charge that changes, modifies, or adds to the charge as given. On the contrary, it is but a repetition of the general charge of the court upon the same subject-matter, and, though perhaps it is differently phrased, nevertheless it is substantially identical and could not have been prejudicial to either party.

[3] The trial court correctly charged in reference to the sale of mines Nos. 7 and 10. The defendant had a right to enter into contracts reasonably proportionate to the capacity of its mines. Had it been the intent and purpose of the defendant to retain mines Nos. 7 and 10, it would have had the right to enter into contracts approximating the capacity of all four of its mines. It is of no importance to plaintiff whether defendant contracted a reasonable proportion of the output of two mines or the output of four mines. The ratio would be the same. The capacity of the two mines retained by it was 40,000 tons a month. Whether contracts aggregating 32,000 tons a month were excessive for that capacity was a vital and one of the controlling questions in this case. It is urged that a coal operator should not be at liberty to enter into pro rata contracts of this type up to the theoretical capacity of his mine, when there is an established and long-standing condition of car shortage, and the continuance of which, for a substantial part of the contract period, he is bound to anticipate, nor be permitted to increase his contract obligation while such an established shortage continues and should be anticipated. No such question is presented by the record in this case.

[4] It is also insisted that the court erred to the prejudice of plaintiff in the rejection of evidence tending to prove special damages by reason of the enforced closing of its plant for lack of fuel. The contract between the parties did not contemplate requirements of any particular plant. On the contrary, the coal was to be shipped to Bay Ridge, Ohio, or Syracuse, Ind., upon the order of the plaintiff. If it were conceded that plaintiff's profits could have been ascertained with such certainty that a jury's estimate thereof would not be merely speculative, yet there is nothing in this contract to indicate that either of the parties, at the time this contract was made, contemplated or reasonably should have contemplated that the natural and proximate result of a breach thereof would cause the closing down of plaintiff's plant. Globe Refining Co. v. Lands Cotton Oil Co., 190 U. S. 540, 23 Sup. Ct. 754, 47 L. Ed. 1171; Howard v. Stillwell Mfg. Co., 139 U. S. 199, 11 Sup. Ct. 500, 35 L. Ed. 147.

[5] It is also insisted that the court committed prejudicial error in instructing the jury that the defendant had the right to make a new contract with the Camden Coke Company on June 10, 1920, "at a time when the defendant was admittedly in default in the performance of its contract." When plaintiff and defendant entered into this contract the Camden Coke Company had a contract for the delivery of 8,000 tons per month to July 1, 1920. The Camden Coke Company was a regular customer of the defendant. When this contract expired the tonnage in the new contract was reduced to 4,000 tons per month. This change in the amount was largely to the advantage of

plaintiff. The contract made with the Camden Coke Company on June 10, 1920, extended for several months after the expiration of the plaintiff's contract. While it is claimed by the defendant that the conditions that obtained at the time his contract was renewed prevented it from delivering the full amount of the contract coal each month, nevertheless these conditions might change for the better at any time within a week or a month thereafter.

From the facts and circumstances established by the evidence in this case, the plaintiff had no right to expect that the regular customers of the defendant would be denied a renewal of their existing contracts. That course of conduct would be destructive of defendant's business. It is true that, under the conditions that obtained shortly thereafter, this would have been to the temporary financial advantage of defendant, but eventually it would be disastrous.

For the reasons stated, the judgment of the District Court is affirmed.