38 So.2d 895

### TAYLOR v. SHOEMAKER.
#### 4 Div. 58.

Court of Appeals of Alabama.
Oct. 5, 1948.

Rehearing Denied Nov. 9, 1948.

L. A. Farmer, of Dothan, for appellant.

Carl S. Farmer, of Abbeville, and G. D. Halstead, of Headland, for appellee.

HARWOOD, Judge.

This cause originated as a bill in equity whereby the appellant here, complainant in the equity proceedings, sought specific performance of a contract entered into between the complainant and respondent. The bill alleged that in February, 1946, the respondent, who was engaged in the automobile business in Abbeville, Alabama, in consideration of the payment of $400 to him by complainant, as part payment of the purchase price of four new Ford automobiles, agreed to sell and deliver to complainant the 7th, 8th, 9th, and 10th new Ford automobiles received by him after said date, complainant to pay the balance due on each car upon its delivery, the purchase price to be regular list price of the automobiles on the date of delivery.

The bill further alleges that in October 1946 the respondent, after repeated demands, delivered one Ford automobile to complainant, and received the regular purchase price for same, but did not give complainant credit for the sum of $100 already deposited as part of the purchase price.

It is further alleged that since the contract was entered into in February, 1946, the respondent had received a great many more than ten Ford automobiles, and has sold to others a great many more than ten new Ford automobiles, and has failed and refused to deliver to complainant the remaining three automobiles he agreed to deliver to him.

It was further alleged that complainant made known to respondent at the time the contract was entered into that he, complainant was engaged in the taxi business in Dothan, Alabama, and was purchasing these automobiles to use in said business; and that if the automobiles had been delivered as agreed complainant would have used them in said business and could have earned a profit of $1000 from such use.

Complainant averred that respondent was still conducting his automobile business, and within the next thirty days would receive at least three new automobiles for delivery to customers; and that he had at all times since the making of the contract been able, willing, and ready to perform his part.

The respondent's demurrer to the above complaint was sustained, the complainant being given twenty days to amend his complaint.

Thereafter, *and on motion of the complainant* the cause was removed from the equity to the law court on 23 April 1947.

Thereafter appellant filed a complaint in the law court, setting up substantially the same facts as alleged in his bill, except that it was averred that the contract was made on 2 November 1946 instead of

in February 1946 as averred in the bill and claimed damages of $5000 for the breach of the contract; $400 of the damages claimed representing the amount paid toward the purchase price of the automobiles, and $4500 representing alleged loss of profits he would have made in this taxi business had delivery of the automobiles been consummated.

Defendant's demurrer to the complaint was overruled and issue was joined on defendant's plea of the general issue.

The trial below was before the court without a jury. After hearing the evidence the court rendered a judgment in favor of the plaintiff for $426.50.

The plaintiff being dissatisfied with the amount of damages awarded perfected his appeal to this court.

The evidence introduced by the plaintiff tends to show that on 2 November 1946 he paid $400 to defendant as consideration for defendant's verbal agreement to deliver to him the 11th, 12th, 13th, and 14th, new Tudor or four door Ford automobiles received by defendant, a Ford dealer. Some months later, upon cancellation of another order for the purchase of five Ford automobiles which had been purchased prior to plaintiff's order, the defendant agreed to deliver to plaintiff the 6th, 7th, 8th, and 9th automobiles received by him of the type desired by plaintiff.

At the time of this transaction plaintiff informed the defendant he was in the taxi business and needed these automobiles for use in that business.

Plaintiff had been in the taxi business in Dothan since 1943, except for a few months, and testified that reasonable net profits during the period of time from the date he made this contract until he went out of the taxi business on 7 July 1946 were $10 per taxi each 24 hours. According to plaintiff the defendant continued to promise delivery of the automobiles even after he had gone out of the taxi business on 7 July 1946,

On cross-examination the plaintiff testified that on 30 September 1946 the defendant did deliver to him one Tudor Ford automobile for which he then paid the list price of $1384.27. So far as plaintiff knew this was the fifth automobile received by the defendant.

The court overruled an objection to a question propounded by the defense eliciting testimony as to whether plaintiff did not immediately sell this automobile for $1875. Upon the objection being overruled the plaintiff answered that he did, but obtained $1775 for it instead of $1875 as indicated in the question.

The plaintiff further testified that he has not been back in the taxi business since disposing of his business on 7 July 1946.

The plaintiff also introduced defendant's answers to interrogatories propounded to him by the plaintiff. The pertinent portion of these answers is that part showing apparently that the defendant on 30 September 1946 did deliver the 5th car received by him to plaintiff after his agreement with him, but delivered several other cars to other persons thereafter and prior to the filing of this suit.

Defendant's counsel admitted that defendant had sold a number of automobiles to persons other than plaintiff after delivery of the fifth car to the defendant.

For the defense Mr. Shoemaker testified in his own behalf. The tendency of his testimony was that he had, on 2 November 1946, in consideration of $400 paid to him by plaintiff, verbally agreed with plaintiff to deliver to him the 10th, 11th, 12th, and 13th new Four door or Tudor Ford automobiles he received after the date of the agreement. Plaintiff informed him at the time of making the agreement that he intended to use the automobiles in his taxi business. Mr. Shoemaker said he told plaintiff he could not promise delivery of the automobiles as he did not know when he would receive them. Actually, the fifth car of the type delivered was delivered to plaintiff on 30 September 1946.

Mr. Shoemaker further testified that after delivery of the automobile to plaintiff in September he heard that the plain-

tiff had gone out of the taxi business, and also heard that plaintiff had resold the car that had been delivered to him. Mr. Shoemaker then offered to return to plaintiff the $400.

Appellant's first assignment of error is that the lower court erred in sustaining the demurrer to the bill of complaint filed in the equity court.

■ This court of course has no chancery jurisdiction. We do not however consider that the proposition raised by appellant's first assignment of error is before us.

■ Appellant did not appeal from the ruling on the demurrer, but moved the court to transfer the cause to the law court. This motion was granted. A party cannot appeal from a judgment or order rendered at his request. M. L. Blumenfeld & Co. v. Hamrick, 18 Ala.App. 317, 91 So. 914.

Appellant's assignments of error Nos. 2, 3, and 4 all pertain to alleged error on the part of the lower court in awarding inadequate damages in the judgment rendered in appellant's favor.

Since the court awarded appellant damages covering the amount of the down payment, $400, plus interest, of $26.50, any inadequacy in the amount awarded must result from the court refusing to award damages for alleged loss of profits from use of the automobiles in a taxi business.

■ In Brigham & Co. v. Carlisle, 78 Ala. 243, 56 Am.Rep. 28, our Supreme Court enunciated the following doctrines pertaining to the recovery of damages for loss of profits:

"But there are damages, which are in the contemplation of the parties at the time of making the contract, and are the natural and proximate results of its breech, which are not recoverable. The parties must necessarily contemplate the loss of profits as the direct and necessary consequence of the breach of a contract, and yet all profits are not within the scope of recoverable damages. There are numerous cases, however, in which profits constitute, not only an element, but the measure of damage. While the line of demarcation is often dim and shadowy, the distinctive features consist in the nature and character of the profits. When they form an element constituent of the contract, their loss the natural result of its breach, and the amount can be estimated with reasonable certainty, such certainty as satisfies the mind of a prudent and impartial person, they are allowed. The requisite to their allowance is some standard, as regular market values, or other established data, by reference to which the amount may be satisfactorily ascertained. Illustrations of profits recoverable are found in cases of sales of personal property at a fixed price, evictions of tenants by landlords, articles of partnership, and many commercial contracts.

"On the other hand, 'mere speculative profits, such as might be conjectured would be the probable result of an adventure, defeated by the breach of a contract, the gains from which are entirely conjectural, and with respect to which no means exist of ascertaining even approximately the probable results, can not, under any circumstances, be brought within the range of recoverable damages.' 1 Suth. on Dam. 141. Profits speculative, conjectural or remote, are not, generally, regarded as an element in estimating the damages. In Pollock v. Gantt, 69 Ala. 373, 44 Am.Rep. 519, it is said: 'What are termed speculative damages—that is possible, or even probable gains, that it is claimed would have been realized, but for the tortious act or breach of contract charged against a defendant—are too remote, and can not be recovered.' The same rule has been repeatedly asserted by this court. Culver v. Hill, 68 Ala. 66, 44 Am.Rep. 134; Higgins v. Mansfield, 62 Ala. 267; Burton v. Holley, 29 Ala. 318, 65 Am.Dec. 401; White v. Miller, 71 N.Y. 118, 27 Am.Rep. 13; French v. Ramage, 2 Neb. 254; 2 Smith's Lead. Cases, 574; Olmstead v. Burke, 25 Ill. [74], 86.

\* \* \* \* \* \*

"Profits are not excluded from recovery, because they are profits; but, when excluded, it is on the ground that there are

no criteria by which to estimate the amount with the certainty on which the adjudications of courts, and the findings of juries should be based. The amount is not susceptible of proof. In 3 Suth. on Dam. 157, the author discriminately observes: 'When it is advisedly said, that profits are uncertain and speculative, and can not be recovered, when there is an alleged loss of them, it is not meant that profits are not recoverable merely because they are such, nor because profits are necessarily speculative, contingent, and too uncertain to be proved; but they are rejected when they are so; and it is probable that the inquiry for them has been generally proposed when it must end in fruitless uncertainty; and therefore, it is more a general truth than a general principle, that a loss of profits is no ground on which damages can be given.' When not allowed because speculative, contingent and uncertain, their exclusion is founded, by some on the ground of remoteness, and by others, on the presumption that they are not in the legal contemplation of the parties."

In 15 Am.Jur., Section 157, the following general statement concerning recovery of damages for loss of profits is found:

"As a general rule, the expected profits of a mercantile business are too remote, speculative, and uncertain to sustain a judgment for their loss. In many cases a recovery for the loss of future profits caused by the interruption or breaking up of an established business has been denied on this ground, unless, as stated in certain cases, the act which occasioned the loss was malicious. According to the weight of authority, however, a recovery may be had for such losses where they are reasonably certain in character and are the proximate result of either tort or a breach of contract or where, in case of contract, they may be reasonably supposed to have been within the contemplation of the parties, when the contract was made, as the probable result of a breach. In such cases, the damages may be estimated according to the average percentage of mercantile profits. Proof

of the gross receipts of the business standing alone, however, is not sufficient. The proof must pass the realms of conjecture, speculation, or opinion not founded on facts, and must consist of actual facts from which a reasonably accurate conclusion regarding the cause and the amount of the loss can be logically and rationally drawn.

"To come within the rule, it must be made to appear that the business which is claimed to have been interrupted was an established one which had been successfully conducted for such a length of time and had such a trade established that the profits thereof are reasonably ascertainable. The prospective profits of a new business or enterprise are generally regarded as being too remote, contingent, and speculative to meet the legal standard of reasonable certainty applicable in determining the elements of recoverable damages in an action for breach of a contract or for a tort."

The evidence in this cause shows that the appellant sold out his taxi business on 7 July 1946. It further shows that the appellee, defendant below, did deliver one automobile to appellant on 30 September 1946, and that this car so delivered was the fifth automobile of the type ordered by appellant received by the appellee. At this time appellant had not been in the taxi business for some eighty-five days. Even though appellee thereafter breached his agreement with appellant by refusing to deliver the remaining three automobiles, there is no yardstick by which any damages for loss of profits in this case can be measured with reasonable certainty. Appellant was not in the taxi business on the date of delivery of the one automobile. Even had he resumed his taxi business on this date with the one automobile, such business would be a new undertaking rather than an established business. Prospective and contemplated profits from a new business enterprise are too uncertain to be susceptible of requisite proof. This speculative character prevented recovery of hoped for profits.

It is our view therefore that the lower court awarded to appellant the full amount

of damages to which his proof entitled him. Under the evidence and the legal principles governing this cause appellant could not, under any theory, have been entitled to recover larger damages than were awarded him.

This being so, no need arises to consider the remaining errors assigned by appellant, since it is clear that the substantial rights of this appellant were not materially affected by any rulings of the court below, he having been awarded the full amount of damages to which he was entitled under any phase of this case.

Affirmed.