780 So.2d 142 (2001)
Keith M. SHARICK, Appellant,
v.
SOUTHEASTERN UNIVERSITY OF THE HEALTH SCIENCES, INC., d/b/a College of Osteopathic Medicine, Appellee.
No. 3D98-2674.
District Court of Appeal of Florida, Third District.
April 4, 2001.
Richard A. Barnett, Hollywood; Donald A. Tobkin, for appellant.
Panza, Maurer, Maynard & Neel and Thomas F. Panza, Fort Lauderdale, Heidi F. Friedman and Mark A. Hendricks, Deerfield Beach; Ausley & McMullen and John Beranek, Tallahassee, for appellee.
Holland & Knight and Scott D. Makar, Jacksonville; Robert L. Blake, Robert J. Boyd, Sheldon E. Steinbach, for the University of Miami, the Independent Colleges and Universities of Florida and the American Council on Education, as amici curiae.
Before SCHWARTZ, C.J., and SHEVIN and SORONDO, JJ.
Prior report: 780 So.2d 136.

ON MOTION FOR REHEARING
PER CURIAM.
The motion for rehearing is denied.
Before SCHWARTZ, C.J., JORGENSON, LEVY, GERSTEN, GODERICH, GREEN, FLETCHER, SHEVIN, SORONDO and RAMIREZ, JJ.[1]

ON MOTION FOR REHEARING EN BANC
PER CURIAM.
After oral argument, the motion for rehearing en banc is denied.
SCHWARTZ, C.J., and GODERICH, FLETCHER, SHEVIN, SORONDO and RAMIREZ, JJ., concur.
RAMIREZ, J. (concurring).
I concur in the panel opinion in which we reverse and remand for a new trial on damages. I write separately only to address some of the arguments raised by the parties during en banc proceedings.
The judiciary has traditionally deferred to colleges and universities concerning decisions to deny degrees, certificates or academic credit. The rationale can probably be traced to the view that these institutions stand in loco parentis-in place of the parent-with respect to the student. See Robert P. Faulkner, Judicial Deference to University Decisions Not to Grant Degrees, Certificates, and Credit-the Fiduciary Alternative, 40 Syracuse L.Rev. 837, 839-40 (1989); Brian Jackson, The Lingering Legacy of in Loco Parentis: An Historical Survey and Proposal for Reform, 44 Vand. L.Rev. 1135, 1148 (1991). This view is now disfavored because it no longer represents contemporary values. See Faulkner, supra, at 844-45.
One of the vestiges of our past judicial deference is the current requirement that a student seeking redress for the denial of a degree or academic credit cannot prevail against a learning institution unless the school's behavior was arbitrary and capricious. Commentators uniformly agree that this is an extremely high burden.[2] In this case, that burden has been met; the jury found that Southeastern University acted arbitrarily and capriciously, and Southeastern University has not challenged that finding. The issue now devolves into a determination of damages.
*143 As Justice Holmes said, "If a contract is broken the measure of damages generally is the same, whatever the cause of the breach." Globe Ref. Co. v. Landa Cotton Oil Co., 190 U.S. 540, 544, 23 S.Ct. 754, 47 L.Ed. 1171 (1903).
The Intervenor argues that we should not indiscriminately apply contract doctrines to disputes involving academic judgments, even after its initial acknowledgement that "the Florida Supreme Court long ago recognized that the relationship between a student and a private college or university is contractual in nature." Apparently the Intervenor would have the courts allow these institutions to act arbitrarily and capriciously with the assurance that at most they would simply have to refund part of the tuition, which is all that Sharick received in this case, despite the fact that he dedicated several years of his life in pursuit of a degree.
In Koplowitz v. Girard, 658 So.2d 1183, 1184 (Fla. 4th DCA 1995), Justice Pariente wrote: "[t]he goal of an award of damages in a breach of contract action is `to restore the injured party to the condition which he would have been in had the contract been performed.'" (quoting Campbell v. Rawls, 381 So.2d 744, 746 (Fla. 1st DCA 1980), cited with approval in Grossman Holdings, Ltd. v. Hourihan, 414 So.2d 1037, 1039 (Fla.1982)). Even before Sharick has had the opportunity to present his evidence, the dissent finds that his damages for future earnings will be too speculative and consequently, Sharick should receive nothing.
The dissent relies on Slaughter v. Brigham Young Univ., 514 F.2d 622 (10th Cir. 1975) for the proposition that neither a jury nor a court should be permitted to excuse a student from completing all of his professional degree requirements in order to award him damages. However, Slaughter is distinguishable and actually supports Sharick, not Southeastern University.
In Slaughter, the jury awarded the plaintiff $88,283.00 in damages based on his expulsion by Brigham Young University from its graduate school due to a violation of the Student Honor Code. Id. at 623. The appellate court reversed, stating that the trial court had made the improper assumption that the plaintiff would have met the degree requirements. Id. at 624. The panel opinion here does not suggest that we should assume that Sharick would have completed all his degree requirements. Rather, this Court would require Sharick to prove that he would in fact have graduated but for Southeastern University's arbitrary and capricious behavior.
The appellate court in Slaughter also found that the plaintiff had not established a contract between himself and the University and that the trial court's rigid application of commercial contract doctrine was error. Id. at 626. However, the court acknowledged that although the student-university relationship cannot be stuffed into one doctrinal category, "some elements of the law of contracts are used and should be used in the analysis of the relationship between plaintiff and the University...." Id.
In this case, Sharick did have a contractual relationship with Southeastern University and the University arbitrarily and capriciously breached that contract. Consequently, Sharick should be allowed to recover traditional breach of contract damages.[3]
*144 The best analogy to Sharick's situation can be found in cases where new businesses assert lost profits as consequential damages for breach of contract. Both the panel decision and the dissent discuss the Florida cases in this area, but an analysis of the cases in other jurisdictions indicates that the majority view allows a new business to seek lost profits using its best evidence. See Larry T. Garvin, Disproportionality and the Law of Consequential Damages: Default Theory and Cognitive Reality, 59 Ohio St.L.J. 339, 346 n. 29 (1998) ("a few jurisdictions retain the old rule that new businesses may not claim lost profits as consequential damages in actions for breach, because they have no record of past profits that would support such an award. This rule was once standard, but has since become very much a minority position.") (citation omitted).
In Rancho Pescado, Inc. v. Northwestern Mut. Life Ins. Co., 140 Ariz. 174, 680 P.2d 1235 (1984), the court stated:
Until recently, the majority rule in this country prohibited a jury's verdict of damages for lost profits of a new business. See, e.g., Fredonia Broadcasting Corp. v. RCA Corp., 569 F.2d 251 (5th Cir.1978), cert. denied, 439 U.S. 859, 99 S.Ct. 177, 58 L.Ed.2d 167 (1978); Mullen v. Brantley, 213 Va. 765, 195 S.E.2d 696 (1973); St. Paul at Chase Corp. v. Manufacturer[s] Life Insurance Co., 262 Md. 192, 278 A.2d 12 (1971); Dieffenbach v. McIntyre, 208 Okla. 163, 254 P.2d 346 (1952); Taylor v. Shoemaker, 34 Ala.App. 168, 38 So.2d 895 (1948); see generally Dunn, Recovery of Damages for Lost Profits 2nd § 4.1 (1981). These cases were generally decided on the basis that loss of profits from a new business was merely speculative and incapable of being ascertained with the requisite degree of certainty. See Evergreen Amusement Corp. v. Milstead, 206 Md. 610, 112 A.2d 901 (1955). Such reasoning is supported by the generally accepted rule of contract law that damages are not recoverable unless they are reasonably certain. 5 CORBIN ON CONTRACTS §§ 1021-1022 (1964); RESTATEMENT OF CONTRACTS § 331 (1932).
Recent cases have eroded the once generally accepted rule against awarding damages for lost profits to a new business. The modern trend is to allow recovery for such lost profits if they can be proven with reasonable certainty. See, e.g., Guard v. P & R Enterprises, Inc., 631 P.2d 1068 (Alaska 1981); Chung v. Kaonohi Center Co., 62 Haw. 594, 618 P.2d 283 (1980); Cardinal Consulting Co. v. Circo Resorts, Inc., 297 N.W.2d 260 (Minn.1980); Wyoming Bancorporation v. Bonham, 563 P.2d 1382 (Wyo.1977); S. Jon Kreedman & Co. v. Meyers Bros. ParkingWestern Corp., 58 Cal.App.3d 173, 130 Cal.Rptr. 41 (1976); Fera v. Village Plaza, Inc., 396 Mich. 639, 242 N.W.2d 372 (1976); Vickers v. Wichita State University, Wichita, 213 Kan. 614, 518 P.2d 512 (1974); Smith Development Corp. v. Bilow Enterprises, Inc., 112 R.I. 203, 308 A.2d 477 (1973); Brenneman v. Auto-Teria, Inc., 260 Or. 513, 491 P.2d 992 (1971). In Chung, the Hawaii Supreme Court reasoned that, "it would be grossly unfair to deny a plaintiff meaningful recovery for lack of a sufficient `track record' where the plaintiff has been prevented from establishing such a record by defendant's actions." 618 P.2d at 291. And, in Vickers, the Kansas Supreme Court noted that to preclude recovery "as a matter of law merely because a business is newly established would encourage those contracting with such a business to breach their contracts." 213 Kan. at 620, 518 P.2d at 517. The reasoning of these cases is highly persuasive.
Rancho Pescado, 680 P.2d at 1244-45. Thus, rather than award the plaintiff nothing, the plaintiff can simply be required to prove damages "with reasonable certainty."
The dissent also speculates on what evidence Sharick will present upon remand, *145 then proceeds to denigrate the evidence as not within a reasonable degree of certainty. The dissent's speculative approach does provide certainty: the certainty that Sharick will be denied his day in court as to what his lost future earnings might be. It would be patently unfair to deny damages to a student after a school has acted arbitrarily and capriciously, provided that the student can prove those damages with reasonable certainty.
Many law review articles, which are the product of the same university system being sued here, have been critical of the courts, not for their liberality, but for their reluctance to protect students. In Student Versus University: The University's Implied Obligation of Good Faith and Fair Dealing, 59 Md. Rev. 183 (2000), Professor Hazel Glenn Beh concludes that holding the schools accountable for their abuses will not diminish the value of universities as social institutions. After noting that higher education has become increasingly commercial, using various marketing tools to entice students to their schools, she sees The Student-Right-to-Know provisions of the Higher Education Act (20 U.S.C. § 1092) as evidence of "congressional recognition that higher education is both a product and a relationship that begs for external review." Id. at 194, 680 P.2d 1235. Professor Beh further states: "[t]he deeply rooted hostility toward student claims and judicial deference to university conduct toward students becomes increasingly less defensible as bottom-line, commercial concerns motivate university actions and students seek a more consumer friendly product." Id. at 196, 680 P.2d 1235.
Thus, I believe that, as a matter of public policy, the panel opinion is on solid ground. By our decision, we are only requiring that schools not act in an arbitrary and capricious manner, hardly an insurmountable responsibility.
LEVY, Judge (dissenting).
I respectfully dissent.
Sharick essentially seeks a lifetime's worth of future income for a potential career in an unknown field from a degree not yet obtained. Under these circumstances and for the following reasons, I do not find it possible for Sharick to establish and prove his loss of future earning capacity within a reasonable degree of certainty.
On remand, the majority opinion allows Sharick to plead and prove damages in the form of lost future earning capacity. Presumably, Sharick will attempt to meet this burden by use of expert testimony establishing the future earning capacity of a person with a degree in osteopathic medicine. However, his use of an expert under such circumstances would be error as the expert witnesses' testimony would not be based on a person in Sharick's positiona student that has yet to receive a Doctor of Osteopathy (hereafter "D.O.") degree or meet the other requirements to obtaining a D.O. license. It is inconceivable that an expert could determine if or when Sharick would meet the preconditions to employment in the D.O. field.
Before Sharick would even be eligible to practice as a D.O., he would have to successfully complete his final class, pass part two of the state board examinations, successfully complete either an internship or residency program or both, and then meet all licensing requirements of the state D.O. board. Whether or not Sharick would be successful in this endeavor is beyond reasonable conjecture. Neither a jury nor a court should be permitted to excuse a student from completing all of his professional degree requirements in order to award him damages. See Slaughter v. Brigham Young University, 514 F.2d 622, 626-627 (10th Cir.1975).
However, even if it were proper to assume that Sharick would meet these preconditions to employment, it is still unknown what type of D.O. position Sharick would actually hold and where he would be working. Indeed, footnote two of the majority opinion indicates that, should Sharick *146 complete his one year internship after graduation, he would be qualified to serve as either a pathologist, medical administrator, medical examiner or workers compensation hearing officer, and that he would be eligible to get a license to practice as a D.O.. Given this wide array of possibilities, I find it impossible to determine Sharick's loss of future earning capacity within a reasonable degree of certainty. Suffice it to say that, should Sharick go further and complete a residency program, his possibilities for employment would become even more diverse and, consequently, even more undeterminable. Sharick's ultimate goal may be to become a family practitioner, but it is unreasonable to assume that he will do so.[4]
Finally, the majority's analogy to loss of prospective business profits is misplaced. The cases cited by the majority hold that, regardless of whether a business has an established "track record", the business can recover lost prospective profits when damages can be shown to a reasonable certainty by competent proof. See W.W. Gay Mechanical Contractor, Inc. v. Wharfside Two, Ltd., 545 So.2d 1348 (Fla. 1989); R.A. Jones & Sons, Inc. v. Holman, 470 So.2d 60 (Fla. 3d DCA 1985). Unlike the instant matter, however, those holdings were based on a set of facts and circumstances upon which one could reasonably ascertain, without excessive surmise: (1) the precise scope of the plaintiffs' businesses; (2) exactly where the plaintiffs' were doing business; (3) the specific nature of the plaintiffs' damages suffered due to the defendants' breach of contract; and (4) the "yardstick" by which prospective profits could be measured. See W.W. Gay Mechanical Contractor, Inc., 545 So.2d at 1351 (allowing hotel owners to recover for lost business where there was competent and substantial evidence that plumbing problems reduced the number of guests staying at a hotel); R.A. Jones & Sons, Inc., 470 So.2d at 71 (finding a seller's claim for lost profits could reasonably be derived from "the unconsummated sale of two irrigation systems to two committed and long-standing customers"). As no such certainty exists in the case at bar, I find the "lost profit" line of cases to be inapposite to the instant matter.
In summary, I would find that Sharick is not entitled to recover, as damages, lost future income that he might have earned as a D.O. in an undetermined field only after he might possibly have passed his boards and potentially received a D.O. license. It is wholly speculative whether Sharick would ever practice as a D.O., much less become successful and earn substantial income. The majority opinion requires the jury to utilize a divining rod of conjecture which simply cannot find water.[5] For these reasons, I respectfully dissent.
JORGENSON, GERSTEN and GREEN, JJ., concur.
NOTES
[1] Judge Cope is recused.
[2] See Faulkner, supra, at 842 ("Once invoked, this standard proves automatically dispositive of the controversy."); see also Charles Alan Wright, The Constitution of the Campus, 22 Vand. L.Rev. 1027, 1069 (1969) ("I know of no case in which relief has been given on this ground.").
[3] It would seem that the best solution in this case would have been to reinstate Sharick and allow him to complete his degree requirements. Sharick attempted this course of action by requesting specific performance, but Southeastern University obtained a dismissal of that count. In this regard, the language of Slaughter, supra, at 627, is instructive:

Ordinarily the remedy available in these circumstances would be reinstatement rather than damages. It is, however, apparent that damages arising from a wrongful dismissal could in the proper case be alleged and be shown without an assumption that the academic requirements were met, but these elements would be quite different from the ones here asserted, and would look more like those applied in tort actions.
[4] Although Southeastern has not challenged the determination that it arbitrarily and capriciously dismissed Sharick from medical school, Sharick's inappropriate conduct that led to his dismissal is a factor that the jury should consider when determining whether Sharick would have become employed and in what capacity. Specifically, the record indicates that Sharick was dismissed because he: (1) "was apparently unable to identify very fundamental signs and symptoms of diabetes mellititus"; (2) "failed to examine the abdomen and suprapubic area of a woman complaining of lower abdominal pain and presenting with symptoms of a urinary tract infection"; (3) "raised the skirt of a female patient without informing her that [he was] going to do so"; and (4) "consistently failed to review charts properly prior to interacting with these patients."
[5] Sharick should have appealed the dismissal of his claim for specific performance as that is the appropriate remedy when a private educational institution has been found to have acted in an arbitrary and capricious manner.