PENNSYLVANIA COMPANY, a corporation of the Commonwealth of Pennsylvania,
Plaintiff,

*vs.*

WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, and J. RUSSEL COULTER, Trustees under the Will of George P. McNear, Jr., deceased,
Defendants-Third-Party Plaintiffs,

*vs.*

ELIZABETH M. MCNEAR ET AL.,
Third-Party Defendants.

*New Castle, March 1, 1963.*

*John J. Morris, Jr.,* of Morris, James, Hitchens & Williams, Wilmington, for plaintiff.

*Aaron Finger* and *Robert H. Richards, Jr.,* of Richards, Layton & Finger and *William S. Potter* and *James L. Latchum,* of Berl, Potter & Anderson, Wilmington, for defendant, Wilmington Trust Co., Trustee.

*H. James Conaway, Jr.,* of Morford, Young & Conaway, Wilmington, and *Philip W. Tone,* of Thompson, Raymond, Mayer & Jenner, Chicago, Ill., for defendant, J. Russel Coulter, successor trustee.

*Clair John Killoran* and *E. Dickinson Griffenberg, Jr.,* of Killoran & VanBrunt, Wilmington, and *Stuart S. Ball, Richard J. Flynn* and *James G. Archer,* of Sidley, Austin, Burgess & Smith, Chicago, Ill., for adult third-party defendants.

*David Snellenberg, II,* of Killoran & VanBrunt, Wilmington, Guardian ad litem for minor third-party defendants.

SEITZ, Chancellor: This is the decision, after submission of briefs by the parties, on the form of order to be entered in this case. In its opinion on the merits this court said, "The Trust Company must bear the burden of a surcharge in an appropriate amount because of its failure to act at an earlier time when it could admittedly have escaped any claim of liability by Pennsylvania based on the April 15 agreements." 186 *A.2d* 751, at 782. The questions presently before the court concern the principal amount of the Trust Company's liability, interest, adjustments for taxes, and payment of costs, counsel fees, and expenses.

## I. *Principal Amount of Liability.*

In its earlier opinion the court found that the Trust Company could have withdrawn from the April 15 agreements without possible legal liability at any time before April 27. Prior to that time the Trust Company had received Heineman's offer of $133.33 for the TP & W stock, which exceeded by one-third the amount which the trustees had previously agreed to accept from the other parties on April 15. The Trust Company was found to have committed two separate breaches of trust. First, the Trust Company failed before April 27, to withdraw from the April 15 agreements or to delay their consummation though it was apparent to it that Heineman might well pay a substantially larger amount for the stock. Secondly, the Trust Company had a duty to communicate Heineman's offer to its co-trustee and having failed to do so, deprived Gladson of an opportunity to save the trust estate from the ultimate loss occasioned by its delay in withdrawing from the April 15 agreements.

The Trust Company contends that it is entitled to a "credit" for the amount by which the ultimate selling price ($135 per share) exceeded Heineman's offer of $133.33. Its theory is that there was a single breach of trust involving an improper refusal to sell to Heineman at $133.33 and presumably an improper sale to someone else at a higher price. Thus, it contends, the "loss" resulting to the trust estate from the settlement should be offset by the "gain" arising from the sale at $135.

I cannot agree with the Trust Company's contention. The court's earlier opinion I think clearly indicates that the breach of trust did not lie in the Trust Company's failure to sell to Heineman. It lay rather in its failure to react to the apparent possibility of selling the stock at a much higher price and its delay in withdrawing from agreements which might have bound it to sell at a lower price. Its delay in withdrawing placed it in the position of having to compromise Pennsylvania's claim based on one of these agreements. But its subsequent withdrawal from the agreements after April 27, and its sale to Santa Fe at $135 did not result in a "gain" to the trust estate. By selling at $135, it only achieved what it presumably would

have achieved had there been no earlier agreement at all. Thus, under either breach of trust the Trust Company is not entitled to a "credit" for selling the stock at a price in excess of $133.33. The settlement sum paid to Pennsylvania was a dead loss to the trust estate caused by the Trust Company's failure to act with the care required of it by the Delaware statute. It decreased the amount which would otherwise have been realized from the sale of the stock at $135 per share. Thus, the principal amount of the Trust Company's liability is $500,000.

## II. *Interest.*

Having determined that the Trust Company is chargeable for the full $500,000, the only issue I am confronted with under this head is the rate of interest to be paid thereon. It is agreed that interest is due the trust estate from the date of payment to Pennsylvania.

The Trust Company objects to the beneficiaries' request for interest at the legal rate of six per cent. It concedes that the matter is largely one in the court's discretion but contends that in the absence of fraud or bad faith the amount of interest should approximate what would otherwise have been received by the trust as income but for the trustee's dereliction. It points out that the aggregate interest earned by the remaining trust property during this period was slightly under three per cent.

I start with the proposition that the amount of interest should at a minimum restore to the beneficiaries the income that they otherwise would have received. The beneficiaries contend, however, that three per cent would be inadequate here for the reasons that:

(a) the low rate of return on the other trust property was the result of substantial investment by the Trust Company in tax-free securities and any recovery of interest here would be subject to depletion by federal income taxes.

(b) the trust estate incurred certain expenses in liquidating trust property in order to obtain funds to pay to Penn-

sylvania under the settlement which will not otherwise be recovered.

(c) the trust estate has been deprived of any opportunity for appreciation with respect to $500,000 of capital.

I am persuaded that the beneficiaries are entitled to interest at a rate sufficient to give them the net amount that they would otherwise have received as income and to restore to the trust estate any amounts expended from corpus. The factor of capital appreciation is one that of necessity cannot readily be computed, but the court gives some consideration to the rate of appreciation of other trust investments.

Since computation of the rate of interest here is subject to certain imponderables which are referred to above, a reasonable accommodation of the conflicting interests is called for. I am persuaded that this is not an appropriate case for the arbitrary imposition of interest at the legal rate of six per cent. I conclude that the allowance of interest at the rate of four per cent will fairly reimburse the trust under the circumstances.

### III. *Adjustments for Taxes.*

The Trust Company contends that there is a possibility that the trust estate will obtain a refund or reduction of federal income taxes as a result of the settlement payment to Pennsylvania and that it should therefore receive a credit in that amount. The beneficiaries and individual co-trustee contend that no tax benefit can result and that in any case the Trust Company's liability cannot be reduced by any such purported refund as a matter of law. Inasmuch as the parties are agreed that at the present time the possibility of a tax saving is purely speculative, the decision on this matter will be deferred until the tax problem is resolved.

### IV. *Costs, Counsel Fees, and Expenses.*

The beneficiaries and individual co-trustee propose that all the costs of this proceeding both before and after the settlement with

Pennsylvania be charged against the Trust Company. They urge that the Trust Company be denied reimbursement from the trust estate for its counsel fees and expenses incurred in this action and in a similar action in the federal district court and ask further that the court reserve jurisdiction to hear and determine their application to have their counsel fees and expenses assessed against the Trust Company.

The Trust Company urges the court to defer its decision on all of these matters for the present time. Since an appeal is indicated on the merits of this action, I believe it is preferable to defer any decision on these matters until disposition of the appeal.

Present order on notice.