This case involves two separate appeals: the first appeal is from a judgment in a suit by beneficiaries of a trust against First Alabama Bank of Huntsville, N.A., acting as trustee under a written trust agreement, claiming mismanagement of the trust fund and breach of a fiduciary duty, and requesting removal of the trustee and an accounting of the subject trust; the second appeal is from a final judgment after the trial of the foregoing cause denying the Bank's request for additional attorneys' fees from the trust fund. Because of our reversal of the judgment and remand of this cause for further proceedings in equity, we will address at length only the threshold issue: whether the trial court erred in denying the Bank's motion to strike the Plaintiffs' demand for a jury trial.
The Bank strenuously insists that the Plaintiffs' claim for money damages, grounded on the allegation that the Bank, as a professional trustee, breached its fiduciary duty in its management of the trust estate, is not such a claim for money damages, cognizable at common law, as to entitle the Plaintiffs to a jury trial. We agree. While, generally speaking, a trust, created by written instrument, partakes of many of the same legal incidents as other written agreements, historically, remedies to enforce rights arising under a trust have been relegated to the exclusive jurisdiction of equity.
It is generally accepted that the modern trust is an outgrowth of the ancient cestui que use. The cestui que use was "one for whose use and benefit lands or tenements [were] held by another." Black's Law Dictionary (4th ed. 1957). It was a common method used by feofors to avoid feudal burdens or forfeitures for treason. 2 Scott on Trusts, § 164 (3d ed. 1967). The relationship created by this use required no active duties or powers on the part of the feofee (the one in whom legal title or seisin was held). All affirmative duties were required to be contained within the use agreement. 2 Scott on Trusts, supra. Because legal title was in the feofee, there was no remedy at law when the feofee used the land for his own benefit rather than for the benefit of the feofor. The court of equity stepped in to fill this void.
According to Professor Maitland, "[t]rusts fell under the equitable jurisdiction of the Court of Chancery and for that very reason the Courts of Law did not enforce them. Just now and again they threatened to give an action for damages against the defaulting trustee — but they soon abandoned this attempt to invade a province which equity had made its own." Maitland,Lectures on Equity, p. 54, as cited in Scott and Scott, Caseson Trusts, at p. 415 (5th ed. 1966).
 "Although, as we have seen, the courts did not allow an action of special assumpsit or covenant to be maintained against a trustee for a breach of trust, an action at law was permitted where the trustee was under an immediate and unconditional duty to pay money to the beneficiary. In such a case, as we have seen, an action of account lay at law. Later it was held that if the amount due the beneficiary was liquidated, an action of general assumpsit would lie, even though the sum due was not liquidated. Professor Ames summarized the matter by declaring that the claim of the cestui que trust `is purely equitable, except where account would lie at common law.' (Ames, Cases on Trusts 235 (2d ed. 1893.)) In situations where account lay, the action was gradually superseded by the actions of debt and general assumpsit or *Page 514 
by a bill in equity." Scott and Scott, Cases on Trusts, p. 416 (5th ed. 1966).
Both Scott and the Restatement (Second) of Trusts (1959) recognize exclusive equitable jurisdiction over remedies for a beneficiary against a trustee, with two exceptions: "(1) If the trustee is under a duty to pay money immediately and unconditionally to the beneficiary, the beneficiary can maintain an action at law against the trustee to enforce payment. (2) If the trustee of a chattel is under a duty to transfer it immediately and unconditionally to the beneficiary and in breach of trust fails to transfer it, the beneficiary can maintain an action at law against him." Restatement (Second) of Trusts, § 198 (1959). The courts of Alabama have consistently recognized and applied this common law development. Ex parte Garner, 280 Ala. 111, 190 So.2d 544
(1966). For a case applying the "at law" exception, see Exparte Davis, 465 So.2d 392 (Ala. 1985).
Although the issue was somewhat differently framed, this Court in First Alabama Bank of Montgomery, N.A. v. Martin,425 So.2d 415 at 423 (Ala. 1982), stated:
 "It has long been the law in Alabama that where a trustee does not perform his duty to protect the trust, the beneficiaries may sue in equity to protect their rights. Riley v. Bradley, 252 Ala. 282, 41 So.2d 641 (1948); Ex parte Jonas, 186 Ala. 567, 64 So. 960 (1914). Supervising the administration of trusts is a well-recognized ground of equity, Scott v. Mussafer, 223 Ala. 153, 134 So. 857 (1931), and the regulation and enforcement of trusts is one of the original and inherent powers of the equity court. Silverstein v. First Nat. Bank of Birmingham, 231 Ala. 565, 165 So. 827 (1936)."
Applying this rule to the Plaintiffs' complaint, the trial court held that the Plaintiffs were not entitled to a jury trial with respect to their demands to remove the Bank as trustee and to require an accounting of the Bank. As to the remaining request for money damages, however, the trial court held that this did create a legal issue that entitled Plaintiffs to a trial by jury.
While the rule, as here applied, is generally correct, it is not correct with respect to trusts. As seen by the historical background, the court of equity embraced the full jurisdiction of trusts, save for the two exceptions referred to above, neither of which is applicable here.
We recognize that the application of pure logic presents a persuasive argument for including a third exception: a claim for money damages only, based on an alleged breach of fiduciary duty. We are persuaded, however, to adhere to precedent and leave all matters pertaining to trusts, other than the two recognized exceptions, within equity's exclusive jurisdiction.
Because remedies of money damages based on a claim for breach of trust were not cognizable at law, we are constrained to reverse the judgment from which the first appeal is taken and to remand this cause for further consideration by the trial court.
In keeping with the spirit of A.R.Civ.P. 1 (c), we direct that this cause be reassigned to the same trial judge who heard the entire proceedings before the jury and whose judgment, based on the jury verdict, is the subject of this appeal. Upon the retrial of this cause, the trial judge, sitting in equity, may elect to treat the jury's verdict as advisory and give it such weight as, in his discretion, he deems appropriate.
He may proceed without additional testimony to make findings of fact and conclusions of law; or, in his sole discretion, he may choose to await the entering of independent findings and final judgment until he has heard additional testimony. In like manner, he may elect to have counsel for the respective parties reargue some or all of the issues, with or without the taking of additional testimony.
In summary, the trial judge is not required to conduct a completely new trial before rendering his independent findings and judgment so long as the trial judge on remand is the same trial judge who heard *Page 515 
the entire cause presented to the jury. This directive, however, is not intended to limit the trial judge's discretion in conducting a new trial as outlined above.
While it is unnecessary to discuss at length each of the numerous issues remaining, because of the impending reconsideration of this cause by the trial judge, we will address briefly the propriety of the trial court's denial of the Bank's motion for directed verdict and the issue of damages. We re-emphasize that our treatment of these issues is by way of general observations for the guidance of the trial court's further proceedings in this cause, and is not intended for precedential value in this or any other cause. The reader will also understand that our observations, of course, are limited to the evidence of record before us, and are not intended to restrict or otherwise influence the record upon remand of this cause to the circuit court.
 DIRECTED VERDICT MOTION (TREATED AS A MOTION FOR DISMISSAL IN A NONJURY CONTEXT — A.R.Civ.P. 41 (b))
To better understand and appreciate the Bank's position with respect to the directed verdict, we set forth a brief statement of the undisputed background facts. The trust donor had served as President and then as Chairman of the Board of the Trustee Bank. Before his death in 1973, he executed a last will and testament which, inter alia, contained a rather lengthy and sophisticated instrument of trust, naming the instant Plaintiffs as beneficiaries and the instant Defendant Bank as trustee. The assets of his estate before administration totaled $4 million. After the testator's specific bequests had been honored and the payment of debts, the net value of the trust was in excess of $500,000. Stock in the Trustee Bank's holding company comprised approximately 30% of the total worth of the testator's estate prior to administration. This stock composed more than 70% of the trust after administration.
Following summary judgment on behalf of the Bank as to certain of the Plaintiffs' claims and severance of certain "equitable" claims, the central thrusts of the claims submitted to the jury were mismanagement of the trust fund and dereliction and indifference of the trust officer in ascertaining and meeting the needs of certain second generation beneficiaries as specifically provided in the trust instrument.
The Bank does not contend that the trial court's recognition and application of the "prudent person" rule, with respect to the Bank's alleged breach of fiduciary duties, was an erroneous interpretation of Alabama law generally; rather, it is the Bank's contention that this general rule was modified by the express terms of the trust agreement. Specifically, the Bank calls our attention to the following language from the trust document:
 "(3) POWERS OF TRUSTEE. . . . I grant the following powers to my Trustee . . .
 "(a) To sell, exchange, transfer, convey, either before or after option granted, all or any part of said Trust Estate and any trust created herein, upon such terms and conditions as it sees fit to invest and reinvest such Trust Estate and any trust created herein and the proceeds of sale or disposal of any portion thereof, in such loans, stocks, common or preferred, bonds, insurance contracts, or other securities, mortgages, common trust funds, or other property, real or personal, whether so-called `legal' investments of trust funds, or not, as to it may seem suitable, and to change investments and to make new investments from time to time as it may seem necessary or desirable, regardless of any lack of diversification, risk, or nonproductivity."
While we are purposefully avoiding a detailed statement of the evidence, as well as the parties' respective positions as to reasonable inferences therefrom, it is necessary and appropriate that we make this further comment: The plaintiffs allege in part that the trust's portfolio contained an *Page 516 
inordinant amount of the Bank's holding company stock, in violation of sound management practices as testified to by expert witnesses. The Bank counters by pointing to the "lack of diversification" authorization in the instrument of trust.
We agree with the general proposition that the duties and obligations of the trustee are governed in large measure by the terms of the trust instrument. Scott and Scott, Cases onTrusts, p. 418. We do not agree, however, that this proposition can be applied here to lessen the duty imposed by the "prudent person" standard. Birmingham Trust National Bank v. Henley,371 So.2d 883 (Ala. 1979). A statement of the general rule is found in the Restatement (Second) of Trusts at § 174 (1959):
 "The trustee is under a duty to the beneficiary in administering the trust to exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property; and if the trustee has or procures his appointment as trustee by representing that he has greater skill than that of a man of ordinary prudence, he is under a duty to exercise such skill."
As the beneficiaries point out, the "lack of diversification" authorization must be read in conjunction with the totality of the trust agreement which contains the following additional language:
 "(3) POWERS OF TRUSTEE. . . . However, none of these powers shall be exercisable if to exercise the power would defeat my intention regarding my Trust Estate. . . ."
We do not perceive, from the language of this trust, that the donor intended by his "lack of diversification" provision to authorize acts of imprudence in the management of the trust to the point of disregarding the interests of the beneficiaries, the sole purpose of the trust arrangement in the first instance. Here, again, we emphasize that it is not our purpose to comment upon the weight of the evidence, for it is not the province of an appellate court to make findings of fact. Our comment is intended merely as rationale for the rejection of the Bank's position that the standard of duty was one merely of bad faith when its duty is measured in light of the specific authorization of the trust agreement.
Applying the "prudent person" rule, then, to the evidence of record before us, we are constrained to hold that the trial court did not err in holding that a fact issue was presented on the breach of duty issue.
 DAMAGES
While this court is of the opinion that the evidence adduced at the trial below, and the reasonable inferences therefrom, will support a judgment under the "prudent person" test, we are further of the opinion that, viewing the evidence more strongly in favor of the beneficiaries, there are no reasonable inferences supportive of the finding of bad faith or willful mismanagement as to support an award of punitive damages.
 AS TO THE SECOND APPEAL
Because the trial court's ruling with respect to attorneys' fees was necessarily tied to the jury verdict and judgment rendered thereon in the principal case, we are constrained to reverse the judgment on which this appeal is based and remand the cause for further consideration by the trial judge in light of the final judgment to be entered in the primary case on remand. For the standard applicable to attorney's fees in trust matters, see Reynolds v. First Alabama Bank of Montgomery,N.A., 471 So.2d 1238 (Ala. 1985).
REVERSED AND REMANDED WITH INSTRUCTIONS.
All the Justices concur. *Page 517