515 So.2d 962 (1987)
FIRST ALABAMA BANK OF HUNTSVILLE, N.A.
v.
Marion Beirne SPRAGINS III, et al.
85-537, 85-538.
Supreme Court of Alabama.
October 2, 1987.
Frank K. Noojin, Jr., and Michael I. Spearing of Watts, Salmon, Roberts, Manning & Noojin, Huntsville, for appellants.
J. Allen Brinkley of Brinkley & Ford, and Robert C. Gammons of Watson, Gammons & Fees, and William T. Galloway of Ford, Caldwell, Ford & Payne, Huntsville, for appellees.
ADAMS, Justice.
The Spragins family, as beneficiaries, brought suit against First Alabama Bank of Huntsville (hereinafter "First Alabama" or "the Bank"), trustee of a trust created by the last will and testament of Marion Beirne Spragins, Sr., for breach of fiduciary duty and mismanagement of the trust fund. Initially, the Bank petitioned this Court for a writ of mandamus after the Circuit Court of Madison County had denied the Bank's motion to strike the Spraginses' jury demand. We denied the writ (Ex parte First Alabama Bank of Huntsville, 425 So.2d 1367 (Ala.1982), without opinion) and the case was tried to a jury before Judge S.A. Watson. The jury returned a verdict in favor of the Spraginses for $533,000.00 in compensatory damages and $1,500,000.00 in punitive damages. First Alabama Bank of Huntsville v. Spragins, 475 So.2d 512 (Ala.1985).[1] The Bank was then permitted to withdraw as trustee.
We reversed and remanded the case to the trial court with instructions, having determined that the case should not have been tried to a jury. We noted that "the evidence adduced at the trial below, and the reasonable inferences therefrom, will support a judgment under the `prudent person' test." We also observed, however, that no reasonable inferences existed to *963 support a finding of bad faith or willful mismanagement which would justify an award of punitive damages.
On re-trial before Judge Watson, the parties agreed to submit the case on the record previously established; no further evidence was presented. The court elected to treat the prior jury verdict as advisory. Judge Watson ruled in favor of the Spraginses and ordered the Bank to pay $685,560.00 in compensatory damages and $79,224.00 in interest. We affirm the judgment of the circuit court.
First Alabama initially challenged the judgment and the denial of the Bank's request for attorney fees, but has since dropped the issue of attorney fees and appeals only the judgment of the circuit court awarding damages to the Spraginses. The Spraginses contend that since the Bank has not briefed or argued the issue of liability in this appeal, liability is conceded. Wilkinson v. Duncan, 294 Ala. 509, 319 So.2d 253 (1975). First Alabama argues that liability is irrelevant to the issues raised here on appeal and contends:
"Although the Bank steadfastly believes it did not commit a breach of the Spragins Trust, it argues that, assuming (but not conceding) such breach of trust, Plaintiffs are nevertheless not entitled to recover any damages."
Damages are not appropriate, the Bank argues, since the Trust suffered no loss.
The issues presented on appeal are whether the trial court erred in awarding damages; whether the trial court's reliance on the plaintiffs' method of calculating damages was erroneous; and whether the court erred in awarding the Spraginses pre-judgment interest.
The facts reveal that Marion Beirne Spragins, Sr., was formerly the president and later chairman of the board of trustees of the defendant (appellant) Bank. His last will and testament included a provision for a trust to benefit the plaintiffs and it designated First Alabama Bank of Huntsville as the trustee. After settlement of his estate, the net value of the trust was $556,881.73, at least 70% of which consisted of stock in First Alabama Bank's own holding company.
As we noted in First Alabama Bank of Huntsville v. Spragins, 475 So.2d 512, the Bank does not argue that the trial court's application of the "prudent person" rule to the Bank's alleged breach of fiduciary duty was erroneous under Alabama law. Instead, the Bank contends that the general rule is modified by the terms of the trust. That agreement states, in part:
"(3) POWERS OF TRUSTEE.... I grant the following powers to my Trustee....
"(a) To sell, exchange, transfer, convey, either before or after option granted, all or any part of said Trust Estate and any trust created herein, upon such terms and conditions as it sees fit to invest and reinvest such Trust Estate and any trust created herein and the proceeds of sale or disposal of any portion thereof, in such loans, stocks, common or preferred, bonds, insurance contracts, or other securities, mortgages, common trust funds, or other property, real or personal, whether so-called `legal' investments of trust funds, or not, as to it may seem suitable, and to change investments and to make new investments from time to time as it may seem necessary or desirable, regardless of any lack of diversification, risk, or nonproductivity."
The Bank argues that the trial court's award of damages was based on First Alabama's failure to diversify the trust holdings, when in fact, the power not to diversify was granted to the Bank by the trust agreement. The alleged "loss" suffered by the trust, the Bank argues, is illusory because the trust principal increased and "substantial income" was earned throughout the Bank's tenure as trustee. First Alabama contends that the court erroneously based its finding that the trust suffered a compensable loss on the Spraginses' calculations of what the trust might have earned had the trust portfolio been more diversified. The Bank argues that no loss was suffered, and, therefore, that the law will not recognize any loss to the trust.
*964 We noted in our earlier consideration of this case, 475 So.2d at 516, that although a trustee's duties and obligations are governed largely by the trust agreement, that agreement cannot be employed to vitiate "the duty imposed by the `prudent person' standard." The circuit court found that the trust agreement provided:
"(3) POWERS OF TRUSTEE.... However, none of these powers shall be exercisable if to exercise the power would defeat my intention regarding my trust estate....
". . .
"(d) To hold any property or securities originally received by it as a part of said trust estate or any trust estate created herein so long as it shall consider the retention thereof for the best interest of said trust estate. ... [emphasis added]."
The Spraginses argue that a loss was incurred by the trust and that the trial court properly found that damages were due. The Bank's concentration of the trust property in its own stock, First Alabama Bancshares, was a violation of its duty of loyalty to the trust beneficiaries and constituted self-dealing, the Spraginses contend. The Spraginses claim, and the trial court found, that the Bank's failure to diversify the trust portfolio was "at least, insensitivity" by the trustee to the duty of loyalty it owed the trust beneficiaries. We agree. As we stated in the earlier appeal of this case:
"The trustee is under a duty to the beneficiary in administering the trust to exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property; and if the trustee has or procures his appointment as trustee by representing that he has greater skill than that of a man of ordinary prudence, he is under a duty to exercise such skill."
475 So.2d at 516, quoting Restatement (Second) of Trusts, § 174 (1959). We agree with the circuit court that the donor did not intend to vest in the trustee Bank a power to diversify so little as to prejudice the interests of the beneficiaries.
From the evidence presented to the circuit court, the advisory jury, and later, Judge Watson, found that the Bank failed to provide a reasoned plan of investment calculated to accomplish the testator's purpose. That purpose was to provide for present and future generations of the testator's family. Testimony by the Bank's senior trust officer revealed that eight years after the Bank had assumed administration of the trust, i.e., by 1982, the needs of the testator's grandchildren had still not been determined by the trustee, a basic step which should have preceded formulation of a prudent plan for management of the trust property. The Bank argued, nevertheless, that it had adopted an investment strategy of "moderate income and moderate growth," in its management of the trust. Again, from the facts presented, the circuit court had more than ample evidence from which to conclude that the plan of investment which the Bank claims to have adopted to manage the Spragins trust was "designed to provide a justification for the failure of the trustee Bank to more fully diversify the trust holdings by selling all or substantially all of the First Alabama Bancshares stock." At a time when the trustee Bank's own investment advisory service was recommending that investment in bank stock be limited to five percent of a trust's portfolio, approximately seventy-five percent of the Spragins trust assets were invested in First Alabama Bancshares. We hold that the circuit court was not in error in concluding that the trustee Bank's management of the Spragins trust was, at least, imprudent, and demonstrated the insensitivity of the trustee Bank in the performance of its duty of loyalty to the trust's beneficiaries.
The appellant argues, however, that liability is irrelevant; that even if the Bank is guilty of a breach of trust, no damages should have been awarded because the Trust suffered no loss. Again, we disagree.
The net value of the Trust was $556,881.73 when the testator's estate was settled. The court found that the trust property, 70 to 75% of which was composed of *965 First Alabama Bancshares during the Bank's tenure as trustee, fluctuated in value from a low of approximately $200,000.00 in 1975 to $776,168.00 by 1983. By contrast, the Spraginses offered the testimony of James C. King, a recognized expert in the field of trust management, to show what active, prudent management might have achieved. The Bank disputes King's conclusion, attributing his estimation of loss suffered by the trust to hindsight and speculation. We conclude that the circuit court was not in error in finding that the trust suffered a compensable loss and, further, that the method employed by Mr. King was not mere speculation and hindsight.
As the circuit court observed, speculation is not a sufficient basis for an award of damages in Alabama. See Mall, Inc. v. Robbins, 412 So.2d 1197 (Ala.1982), Preston v. Alabama Power Company, 401 So. 2d 107 (Ala.1981); Taylor v. Shoemaker, 34 Ala.App. 168, 38 So.2d 895 (1948), cert. denied, 251 Ala. 601, 38 So.2d 900 (1949).
The Spraginses argue that the court correctly determined the amount of the loss by weighing the actual value of the trust principal against what the value would have been had it been prudently managed. The increase in principal cited by the Bank is largely attributable to inflation, the Spraginses contend, and is far less than the increase which would have been realized if the Bank had acted on the investment advice it gave its other customers regarding limiting investment in bank stocks. The Spraginses cite our holding in First Alabama Bank of Montgomery, N.A. v. Martin, 425 So.2d 415 (1982), for the proposition that:
"In Alabama, a court of equity is authorized to mold its decree so as to adjust the equities of the parties and meet the necessities of each situation. Coupounas v. Morad, 380 So.2d 800 (Ala.1980); BBC Investment Co. v. Ginsberg, 280 Ala. 148, 190 So.2d 702 (1966). When a trustee makes an investment that is improper, it is equitable for the court to put the parties in the position they would have occupied except for the breach of trust."
Id., at 429. Based upon testimony and other evidence presented to the Court, Judge Watson concluded that although Mr. King's analysis of the trust portfolio was, of necessity, retrospective, it was not based entirely on hindsight, as the trustee Bank alleged. The court said:
"The defendant sought through cross-examination and argument to demonstrate that Mr. King's evaluation and conclusions were merely the result of an exercise in hindsight. The defendant's position was that the theoretic results achieved were arrived at by a selective process rather than a comprehensive one. This Court has carefully considered that contention being aware of the dangers of basing a conclusion of negligence or wrongdoing on the mere fact of a mishap or poor result. Indeed, the jury (now considered advisory) was instructed that the defendant was not to be considered a guarantor of returns and successful investment and that the mere fact of a loss or decreased earnings alone authorized no recovery. (TR-870) This Court considering the pitfall of hindsight nonetheless is reasonably satisfied that the opinions expressed by Mr. King, while benefited by the history of the portfolio, were not conclusions based solely on hindsight. Rather, Mr. King attempted to determine just how the defendant bank had evaluated the state of the economy, market fluctuations and desirable investments at given intervals during the period that the trust estate was administered. (RT 136-137) Mr. King's analysis of the defendant bank's economic forecast was based upon his review of literature prepared and disseminated by the defendant bank to other trust customers. [Emphasis by the court]. It is not unreasonable to presume that the knowledge possessed by the defendant bank and employed with regard to the administration of other trust accounts was equally available and capable of being employed by the defendant bank in connection with the administration of the Spragins trust account. To hold otherwise would be to hold that these beneficiaries *966 were not entitled to the full benefit of the bank's expertise in connection with the management of their trust estate."
Mr. King's approach, the court said, was one of fiscally sound, conservative, active management of the trust estate. His alternative to the Bank's investment in First Alabama Bancshares was to concentrate the assets in the Standard and Poor's 500 index and in fixed income treasury bills. Although the Bank argues strenuously that Mr. King's approach was speculative and mere hindsight, the trial court had substantial evidence upon which to base its conclusion that King's approach was a responsible investment alternative to the Bank's management method. Indeed, the Bank's investment approach appears to have been based upon the assumption that, at all times during its tenure as trustee, First Alabama Bancshares represented the best possible investment of the trust property. More than sufficient evidence supports the circuit court's finding that the Bank's continued investment of 70 to 75% of the trust assets in bank stock was not in the best interest of the beneficiaries, and that damage to the trust, as a result of the Bank's breach of its duty of loyalty as trustee, constituted a compensable loss.
The court arrived at its assessment of damages suffered by the trust by calculating the "differences in the principal values of the prudently and imprudently managed estates and the income earned on each estate, taking into consideration trust distributions." Specifically, the court found that prudent management of the trust property would have resulted in a principal value of $1,234,108.00 plus earned income of $455,076.00. By contrast, the trust property, as managed by the Bank, had appreciated from $536,000.00 in March 1974, to $776,168.00 by 1983, plus $227,456.00 in earned income.
The court also assessed interest of $79,224.00 against the Bank, an assessment which, the Bank argues, was erroneously awarded on an "unliquidated sum from an arbitrary day," in violation of the recognized standard. The trial court held that because two years had elapsed since the first judgment in this case, interest should accrue from February 6, 1984, the date of the initial judgment in favor of the Spraginses, through January 15, 1986, the date of Judge Watson's second judgment; a total of $79,224.00. This was proper, the court concluded, in order "to adequately compensate the Trust Estate for the total damages suffered." The Bank contends that the rule for awarding prejudgment interest requires that the principal be certain or be ascertainable. Wood v. Central Bank of the South, 435 So.2d 1287 (Ala. Civ.App.1982). The Bank argues that the amount allegedly due was not made certain until the January 15, 1986, judgment of the trial court; that until January 15, 1986, the date from which interest was to accrue was unknown; and that the amount due and the time of payment was unknown until January 15, 1986. For these reasons, the Bank argues that the trial court's award of pre-judgment interest was reversible error.
We have previously held that:
"The rate and amount of interest is a matter in the sound discretion of the court to be determined by the circumstances of each case and should, at a minimum, restore to the beneficiaries the income they otherwise would have received. Pennsylvania Co. v. Wilmington Trust Co., 41 Del.Ch. 153, 189 A.2d 679 (1963)."
First Alabama Bank of Montgomery, N.A. v. Martin, 425 So.2d 415 (Ala.1982). We allowed the trial judge to consider the prior jury verdict in this case as that of an advisory jury; however, he was not bound by the amount of damages awarded in the first trial. After having considered all of the testimony and other evidence presented, the trial judge determined that interest should accrue on the award of $685,560.00 from the date the final judgment was entered in the first trial, February 6, 1984. The court elected to base its assessment of interest on a simple rate of six percent rather than compound the interest due. Again, the significance of the award of $79,224.00 in interest is that this amount was determined by the court to be the *967 amount necessary to adequately compensate the trust through January 15, 1986. We cannot conclude that the court committed reversible error, as the appellant argues.
Our review of a case tried ore tenus is guided by the principles that findings of fact are presumed correct and that a judgment based upon such findings "will not be disturbed on appeal if supported by evidence or any reasonable inferences therefrom, unless they are plainly and palpably erroneous or manifestly unjust." Bettis v. Bettis, 475 So.2d 847 (Ala.1985). The circuit court had substantial evidence of breach of trust by the trustee Bank and of a compensable loss to the trust resulting from that breach. Although other investment alternatives may have produced a different assessment of damages, the evidence relied upon by the court in support of the King alternative is not plainly and palpably wrong or manifestly unjust.
The judgment is, therefore, affirmed.
AFFIRMED.
MADDOX, JONES and SHORES, JJ., concur.
STEAGALL, J., concurs in the result.
TORBERT, C.J., dissents.
BEATTY and HOUSTON, JJ., are recused.
ALMON, J., not sitting.
STEAGALL, Justice (concurring in the result).
I wish to express my reservation about the manner in which the expert witness, King, arrived at his conclusion as to lost profits. It seems rather inconclusive that the expert witness is permitted, through hindsight, to call every fluctuation of the market perfectly. However, in view of the totality of the circumstances of this case, I concur in the result.
TORBERT, Chief Justice (dissenting).
The conclusion that damages are properly awardable in this case is wrong. The central issues presented are whether the failure of the trustee to sell the bank stock of the trustee bank was a breach of trust and, if it was a breach, whether any compensable injury ensued. While reasonable men may disagree as to whether there was an imprudent investment, Justice Adams, writing for a bare majority of the Court, concludes that there was a breach of the duty of loyalty, in spite of the fact that the trust instruments authorized the very conduct at issue. Just as important, if not more so, he then concludes that, even though the supposed breach resulted in no actual loss, the trustee is liable for lost profits and that the measure of those lost profits can be determined by employing perfect hindsight.
As to the issue of liability, I recognize that in First Alabama Bank v. Spragins, 475 So.2d 512 (Ala.1985) (Spragins I) we observed in dicta that on the basis of the record before us at that time, which is identical to the record before us now, application of the "prudent person" rule revealed that a fact issue was presented on the breach of duty issue. However, we also noted that the record would not support a finding of bad faith or willful mismanagement so as to authorize an award of punitive damages.
On remand the trial court found that the investments were imprudent and that the trustee had acted insensitively to its duty of loyalty by retaining the trustee bank's own stock in the trust.
It is not a breach of the duty of loyalty to retain shares of the corporate trustee where the trust instrument authorizes the trustee to do so. The Restatement (Second) of Trusts provides:

"Investment by corporate trustee in its own shares. A bank or trust company as trustee cannot properly purchase for the trust its own shares, even though they are purchased from third persons. This is true although the purchase of similar shares of another bank would be a proper trust investment. Such a purchase is proper, however, if expressly or impliedly authorized by the terms of the trust. By the Federal Reserve Board Regulation F, § 11(a), it is provided that "Funds received or held by a national *968 bank as fiduciary shall not be invested in stock or obligations of, or property acquired from, the bank or its directors, officers or employees, or their interests, or in stock or obligations of, or property acquired from, affiliates of the bank." The Uniform Trusts Act, § 7, provides that "No corporate trustee shall purchase for a trust shares of its own stock, or its bonds or other securities, or the stock, bonds or other securities of an affiliate.
"A corporate trustee cannot properly retain shares of its own stock which it has received from the settlor as an original investment, unless such retention is expressly or impliedly authorized by the terms of the trust or by statute. Such retention is proper not only when it is authorized in specifc terms which refer to the shares, but also where there is a general authorization to retain investments received from the settlor. If, however, because of circumstances which are known or ought to be known to the trustee the retention is or becomes imprudent, it becomes the duty of the trustee to dispose of the shares within a reasonable time. See §§ 230, 231."
Restatement (Second) of Trusts § 20, "Duty of Loyalty" (1959).
Because the retention of the bank stock was authorized, I believed the trial court erred in concluding that there was a breach of loyalty. Furthermore, such a finding would be contrary to our earlier observation that we found no evidence of bad faith. Surely, if a trustee breaches the duty of loyalty, the trustee has acted in bad faith. However, as the Restatement points out, the decision as to how long to retain the stock is guided by the prudent person standard.
As illustrated by the testimony of plaintiffs' principal expert, James King, no one really argues that investing in some shares of the bank stock was imprudent.
"Q. And based upon what the company has done and what management for the company has done, there is no reason for anybody to have worried about the performance of that company so far as you can ascertain from these records over this 10-year period; is it?
"A. Yes or no? I think we all worry, people that are in the investment business. I'm not disputing the fact that First Alabama Bancshares is a fine corporation. It is just the percentage of ownership that I am disputing. I think IBM is a fine corporation, also, but I wouldn't put 80 percent in one account, or if I had it I would sell it. First Alabama is unquestionably one of the finest banks in the southeastern bank holding company area and would compare favorably nationally with any bank holding company."
The specific issue is whether the bank was imprudent in failing to diversify the portfolio, which consisted primarily of bank stock.
"A trustee is relieved of the duty to diversify if it is expressly so provided in the trust instrument. Thus where he is authorized to retain specifically named securities, it is clear that he can retain them even though they constitute a large proportion of the trust estate. The trustee may be impliedly authorized to retain securities of a single issue included in the trust estate at the time of the creation of the trust, even though they constitute a considerable portion of the trust estate. The court is especially likely to find such an intention where the trust estate included shares of a corporation controlled by the testator. A general authorization to retain investments made by the settlor permits the retention of shares of a company which constitute a very large proportion of the trust estate."
3 A. Scott, The Law of Trusts, § 230.3 at 1876 (1967). The settlor of the trust, Mr. Spragins, was president or chairman of the board of First Alabama Bank, or its predecessors, from 1935 through 1973, and his family had been intimately involved in the operation of the bank before that. The trust instrument provides:
"(3) Powers of Trustee ...
"(a) To sell, exchange, transfer, convey, either before or after option granted, all or any part of said Trust Estate *969 and any trust created herein, upon such terms and conditions as it sees fit to invest and reinvest said Trust Estate and any trust created herein and the proceeds of sale or disposal of any portion thereof, in such loans, stocks, common or preferred, bonds, insurance contracts, or other securities, mortgages, common trust funds, or other property, real or personal, whether so-called `legal' investments of trust funds, or not, as it may seem suitable, and to change investments and to make new investments from time to time as to it may seem necessary or desirable, regardless of any lack of diversification, risk or non-productivity.

". . .
". . .
"(d) To hold any property or securities originally received by it as a part of said Trust Estate or any trust estate created herein so long as it shall consider the retention thereof for the best interests of said Trust Estate, irrespective or whether such property or securities are a so-called "legal" investment of trust funds, without liability for depreciation or loss through error of judgment." (emphasis added)
In light of these facts and the applicable law, I question whether plaintiffs have established a breach of trust. Although there is a presumption of correctness of trial court findings where disputed evidence is presented ore tenus, the resolution of the current issues involves an application of law to facts. However, even assuming that there was a breach, I do not believe that the plaintiffs have shown any legal injury, but, it they have, they have not proven the extent of that injury.
We have been very restrictive with regard to allowing recovery for lost profits, primarily because such awards would often be based on very questionable evidence. The Restatement appears to take a similar view, by limiting recovery for lost profits for breach of trusts in the absence of a breach of loyalty to situations where the trustee had a duty to purchase a specific piece of property. Restatement (Second) of Trusts § 205(c) and comment (c) and § 211. See also In re Talbot's Estate, 141 Cal.App.2d 309, 296 P.2d 848 (Dist.Ct.1956). Lost profits are easily ascertained with respect to failure to purchase a specific item, such as shares of XYZ Corporation. In addition, the trust instrument absolved the trustee from liability for any loss or depreciation due to its failure to dispose of assets received at the inception of the trust. While I agree, as we observed in Spragins I, that such an exculpatory clause may not save the trustee in all cases, this clause, along with the judicial policy of limiting speculative damages, is certainly a compelling factor in deciding whether there is liability for lost profits as opposed to actual losses.
Even assuming that lost profits are a proper element of damages, the evidence introduced to establish the amount of lost profits in this case is insufficient. The damages award was calculated with reference to the investment approach testified to by Mr. King,[1] the results of which are shown in plaintiffs' exhibit 501. The evidence shows that the trust suffered no actual loss. Principal increased from $536,000 to $776,168, a gain of 44.807%. Total income was $227,456. Mr. King's hypothetical approach saw principal increase from $570,000 to $1,234,108 a gain of 141.982%. Total income would have been $455,076. While the difference in the increase in principal seems significant, it is the result of a controversial investment philosophy.
First, Mr. King starts with the premise that all bank stock would be sold and reinvested. However, Mr. King agreed that the bank stock was a good investment in general, and his objection was solely that the trust res was too heavily concentrated in that stock. "[T]he trustee is liable only for such loss as results from the investment of the excess beyond the amount which it would have been proper so to *970 invest." Restatement (Second) of Trusts § 228 comment 1. Therefore, Mr. King began from the wrong starting point.
Mr. King then took the proceeds from the hypothetical sale and invested them in one of two investment vehicles, United States treasury bills (T Bills) or a portfolio of stocks known as the Standard & Poor's 500 (S & P 500). At all times he was either 100% invested in T Bills or 100% invested in the S & P 500. He stated that he made the decision as to where to invest based upon information known to the trustee at the applicable times and not on the basis of hindsight. Clearly, the trustee's performance can not be judged on the basis of hindsight. Baldus v. Bank of California, 12 Wash.App. 621, 530 P.2d 1350 (1975).
It is undisputed that diversification is a risk-reduction technique employed by trustees in furtherance of their duty to preserve capital and generate reasonable income. It is interesting that Mr. King argues that diversification is necessary and then adopts an arguably risky investment philosophy. Mr. King's policy is not really one of diversification; it is one of market timing. At all times, he is invested entirely in T Bills or in the S & P 500.
"The difference between speculation and investment is well described by Dr. Headley in Headley, Trust Investments, 97 Trusts & Estates 739 (1952).... As Dr. Headley states, one who buys common stocks with the idea of selling them on the market for higher prices is speculating. One who is making a prudent investment examines the stocks' intrinsic values and purchases them for a long-term investment."
First Alabama Bank of Montgomery, N.A. v. Martin, 425 So.2d 415 (Ala.1983). Mr. King takes issues with Dr. Headley's view:
"Q. And to go back and forth like that is much more of what they call a trading aspect as opposed to a long-term investment; isn't it?
"A. Absolutely not. The turnover in this type of management is actually considerably less than it is under most conventional management forms. By turnover I mean buying and selling stocks. You buy and sell a lot of stocks in very short periods of time. By that I mean if you sell all of your stocks at year end, but then you don't have any transactions for two years, so that it has a tendency to average out in a very low turnover. It isn't a trading philosophy as much as if it turned out to be anything, and we didn't start out this process by determining that the strategy was. It ended up as a result of what we were reading, but it would be more of a market-timing philosophy, not a trading philosophy." (emphasis added)
Regardless of whether Mr. King is correct or Dr. Headley is correct, it is clear that Mr. King's market-timing philosophy is somewhat unconventional.
Mr. King uses the S & P 500 in his hypothetical management approach but admits that he does not actually invest in the S & P 500 because not all stocks in the S & P 500 are of investment quality. He acknowledged that it would be difficult to scrutinize all 500 stocks and seems to suggest that the trustees could have used an index fund, but admits he does not know if such a fund is a legal trust investment.
Most importantly, the trustee's performance is being judged against Mr. King's remarkable ability to call changes in the stock market. He made ten or eleven investment decisions in his hypothetical approach and admits he did not make one mistake.
Plaintiffs' exhibit 153, reproduced in part below, shows the annual rates of return on selected investment alternatives for the years in question, except 1983:

 6-Month T-Bill
Year January July S & P 500 1st Ala.
1974 * 7.71 8.43 -26.47 -58.77
1975 7.14 6.32 * 37.20 33.52
1976 5.65 5.95 * 23.84 44.57
1977 * 4.65 5.41 - 7.18 21.49
1978 * 6.70 7.78 6.56 3.74
1979 10.08 9.47 * 18.19 2.09
1980 12.73 8.35 * 31.48 44.69
1981 *14.96 15.21 - 4.85 18.52
1982 12.88 14.07 * 14.81 - 2.82

The asterisks indicate where Mr. King invested the trust funds in his hypothetical.
*971 Dr. Johnston, another expert, testified for the plaintiffs that for the period in question, the bank stock on average outperformed T Bills, government obligations, bonds, corporate bonds, and the S & P 500. In other words, only through Mr. King's unusual ability to accurately switch in and out of the stock market was he able to produce the returns in his hypothetical management account. It is also readily apparent that if Mr. King had made only one error in switching funds, the change in the spread between the return generated through his approach and the actual return would have been significant.[2]
Speculation is not a sufficient basis for an award of damages. Mall, Inc. v. Robbins, 412 So.2d 1197 (Ala.1982). In order to conclude that the damages award here is not the result of conjecture or speculation, one must come to the conclusion that it was reasonable to assume that a prudent investor armed with the knowledge available to this trustee could have, without any error, called ten or eleven turns of the market so that he was always in the investment vehicle that created the largest returnor, in other words, that this trustee should have performed perfectly. It is therefore my considered opinion that the damages calculated by use of Mr. King's approach are based upon speculation and conjecture and therefore do not provide an adequate basis for assessing damages in this case.
Simply put, the majority's opinion says that if a trustee, while operating within the guidelines established by the trust instrument, makes some error in judgment, even if it results in no actual loss, the trustee is nonetheless liable for profits that might have arisen if the trustee had been fortunate enough to accurately call every major turn of the stock market for a ten-year period. As this is now the law, I suspect that Mr. King will be a very busy and prosperous witness.
I dissent.
NOTES
[1] The report at 475 So.2d 512 (Ala.1985), incorrectly indicated that this case was tried by Judge John D. Snodgrass. It was tried by Judge S.A. Watson.
[1] The record reflects that Mr. King was the leading trust manager in North America from 1965 to 1975.
[2] For example based upon the information in plaintiffs' exhibit 153, in 1974 instead of an approximate 8% gain, a 26.47% loss would have resulted, in 1975 only an approximate 5% gain would result instead of a 37% gain, in 1976 an approximate 6% gain would result instead of a 23.84% gain, in 1977 a 7.18% loss rather than an approximate 5% gain would result, in 1970 an approximate 10% gain rather than an 18.19% gain would have resulted, in 1980 an approximate 11% gain rather than a 31.48% gain would have resulted, and in 1981 a 4.85% loss rather than an approximate 15% gain would have resulted. In 1978 and 1982 the differences between returns in T Bills and the S & P 500 were negligible.