The Spragins family, as beneficiaries, brought suit against First Alabama Bank of Huntsville (hereinafter "First Alabama" or "the Bank"), trustee of a trust created by the last will and testament of Marion Beirne Spragins, Sr., for breach of fiduciary duty and mismanagement of the trust fund. Initially, the Bank petitioned this Court for a writ of mandamus after the Circuit Court of Madison County had denied the Bank's motion to strike the Spraginses' jury demand. We denied the writ (Exparte First Alabama Bank of Huntsville, 425 So.2d 1367 (Ala. 1982), without opinion) and the case was tried to a jury before Judge S.A. Watson. The jury returned a verdict in favor of the Spraginses for $533,000.00 in compensatory damages and $1,500,000.00 in punitive damages. First Alabama Bank ofHuntsville v. Spragins, 475 So.2d 512 (Ala. 1985).[1] The Bank was then permitted to withdraw as trustee.
We reversed and remanded the case to the trial court with instructions, having determined that the case should not have been tried to a jury. We noted that "the evidence adduced at the trial below, and the reasonable inferences therefrom, will support a judgment under the 'prudent person' test." We also observed, however, that no reasonable inferences existed to *Page 963 
support a finding of bad faith or willful mismanagement which would justify an award of punitive damages.
On re-trial before Judge Watson, the parties agreed to submit the case on the record previously established; no further evidence was presented. The court elected to treat the prior jury verdict as advisory. Judge Watson ruled in favor of the Spraginses and ordered the Bank to pay $685,560.00 in compensatory damages and $79,224.00 in interest. We affirm the judgment of the circuit court.
First Alabama initially challenged the judgment and the denial of the Bank's request for attorney fees, but has since dropped the issue of attorney fees and appeals only the judgment of the circuit court awarding damages to the Spraginses. The Spraginses contend that since the Bank has not briefed or argued the issue of liability in this appeal, liability is conceded. Wilkinson v. Duncan, 294 Ala. 509,319 So.2d 253 (1975). First Alabama argues that liability is irrelevant to the issues raised here on appeal and contends:
 "Although the Bank steadfastly believes it did not commit a breach of the Spragins Trust, it argues that, assuming (but not conceding) such breach of trust, Plaintiffs are nevertheless not entitled to recover any damages."
Damages are not appropriate, the Bank argues, since the Trust suffered no loss.
The issues presented on appeal are whether the trial court erred in awarding damages; whether the trial court's reliance on the plaintiffs' method of calculating damages was erroneous; and whether the court erred in awarding the Spraginses prejudgment interest.
The facts reveal that Marion Beirne Spragins, Sr., was formerly the president and later chairman of the board of trustees of the defendant (appellant) Bank. His last will and testament included a provision for a trust to benefit the plaintiffs and it designated First Alabama Bank of Huntsville as the trustee. After settlement of his estate, the net value of the trust was $556,881.73, at least 70% of which consisted of stock in First Alabama Bank's own holding company.
As we noted in First Alabama Bank of Huntsville v. Spragins,475 So.2d 512, the Bank does not argue that the trial court's application of the "prudent person" rule to the Bank's alleged breach of fiduciary duty was erroneous under Alabama law. Instead, the Bank contends that the general rule is modified by the terms of the trust. That agreement states, in part:
 "(3) POWERS OF TRUSTEE. . . . I grant the following powers to my Trustee. . . .
 "(a) To sell, exchange, transfer, convey, either before or after option granted, all or any part of said Trust Estate and any trust created herein, upon such terms and conditions as it sees fit to invest and reinvest such Trust Estate and any trust created herein and the proceeds of sale or disposal of any portion thereof, in such loans, stocks, common or preferred, bonds, insurance contracts, or other securities, mortgages, common trust funds, or other property, real or personal, whether so-called 'legal' investments of trust funds, or not, as to it may seem suitable, and to change investments and to make new investments from time to time as it may seem necessary or desirable, regardless of any lack of diversification, risk, or nonproductivity."
The Bank argues that the trial court's award of damages was based on First Alabama's failure to diversify the trust holdings, when in fact, the power not to diversify was granted to the Bank by the trust agreement. The alleged "loss" suffered by the trust, the Bank argues, is illusory because the trust principal increased and "substantial income" was earned throughout the Bank's tenure as trustee. First Alabama contends that the court erroneously based its finding that the trust suffered a compensable loss on the Spraginses' calculations of what the trust might have earned had the trust portfolio been more diversified. The Bank argues that no loss was suffered, and, therefore, that the law will not recognize any loss to the trust. *Page 964 
We noted in our earlier consideration of this case, 475 So.2d at 516, that although a trustee's duties and obligations are governed largely by the trust agreement, that agreement cannot be employed to vitiate "the duty imposed by the 'prudent person' standard." The circuit court found that the trust agreement provided:
 "(3) POWERS OF TRUSTEE. . . . However, none of these powers shall be exercisable if to exercise the power would defeat my intention regarding my trust estate. . . .
". . .
 "(d) To hold any property or securities originally received by it as a part of said trust estate or any trust estate created herein so long as it shall consider the retention thereof for the best interest of said trust estate. . . . [emphasis added]."
The Spraginses argue that a loss was incurred by the trust and that the trial court properly found that damages were due. The Bank's concentration of the trust property in its own stock, First Alabama Bancshares, was a violation of its duty of loyalty to the trust beneficiaries and constituted self-dealing, the Spraginses contend. The Spraginses claim, and the trial court found, that the Bank's failure to diversify the trust portfolio was "at least, insensitivity" by the trustee to the duty of loyalty it owed the trust beneficiaries. We agree. As we stated in the earlier appeal of this case:
 "The trustee is under a duty to the beneficiary in administering the trust to exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property; and if the trustee has or procures his appointment as trustee by representing that he has greater skill than that of a man of ordinary prudence, he is under a duty to exercise such skill."
475 So.2d at 516, quoting Restatement (Second) of Trusts, § 174 (1959). We agree with the circuit court that the donor did not intend to vest in the trustee Bank a power to diversify so little as to prejudice the interests of the beneficiaries.
From the evidence presented to the circuit court, the advisory jury, and later, Judge Watson, found that the Bank failed to provide a reasoned plan of investment calculated to accomplish the testator's purpose. That purpose was to provide for present and future generations of the testator's family. Testimony by the Bank's senior trust officer revealed that eight years after the Bank had assumed administration of the trust, i.e., by 1982, the needs of the testator's grandchildren had still not been determined by the trustee, a basic step which should have preceded formulation of a prudent plan for management of the trust property. The Bank argued, nevertheless, that it had adopted an investment strategy of "moderate income and moderate growth," in its management of the trust. Again, from the facts presented, the circuit court had more than ample evidence from which to conclude that the plan of investment which the Bank claims to have adopted to manage the Spragins trust was "designed to provide a justification for the failure of the trustee Bank to more fully diversify the trust holdings by selling all or substantially all of the First Alabama Bancshares stock." At a time when the trustee Bank's own investment advisory service was recommending that investment in bank stock be limited to five percent of a trust's portfolio, approximately seventy-five percent of the Spragins trust assets were invested in First Alabama Bancshares. We hold that the circuit court was not in error in concluding that the trustee Bank's management of the Spragins trust was, at least, imprudent, and demonstrated the insensitivity of the trustee Bank in the performance of its duty of loyalty to the trust's beneficiaries.
The appellant argues, however, that liability is irrelevant; that even if the Bank is guilty of a breach of trust, no damages should have been awarded because the Trust suffered no loss. Again, we disagree.
The net value of the Trust was $556,881.73 when the testator's estate was settled. The court found that the trust property, 70 to 75% of which was composed of *Page 965 
First Alabama Bancshares during the Bank's tenure as trustee, fluctuated in value from a low of approximately $200,000.00 in 1975 to $776,168.00 by 1983. By contrast, the Spraginses offered the testimony of James C. King, a recognized expert in the field of trust management, to show what active, prudent management might have achieved. The Bank disputes King's conclusion, attributing his estimation of loss suffered by the trust to hindsight and speculation. We conclude that the circuit court was not in error in finding that the trust suffered a compensable loss and, further, that the method employed by Mr. King was not mere speculation and hindsight.
As the circuit court observed, speculation is not a sufficient basis for an award of damages in Alabama. SeeMall, Inc. v. Robbins, 412 So.2d 1197 (Ala. 1982), Preston v.Alabama Power Company, 401 So.2d 107 (Ala. 1981); Taylor v.Shoemaker, 34 Ala. App. 168, 38 So.2d 895 (1948), cert. denied,251 Ala. 601, 38 So.2d 900 (1949).
The Spraginses argue that the court correctly determined the amount of the loss by weighing the actual value of the trust principal against what the value would have been had it been prudently managed. The increase in principal cited by the Bank is largely attributable to inflation, the Spraginses contend, and is far less than the increase which would have been realized if the Bank had acted on the investment advice it gave its other customers regarding limiting investment in bank stocks. The Spraginses cite our holding in First Alabama Bankof Montgomery, N.A. v. Martin, 425 So.2d 415 (1982), for the proposition that:
 "In Alabama, a court of equity is authorized to mold its decree so as to adjust the equities of the parties and meet the necessities of each situation. Coupounas v. Morad, 380 So.2d 800 (Ala. 1980); BBC Investment Co. v. Ginsberg, 280 Ala. 148, 190 So.2d 702 (1966). When a trustee makes an investment that is improper, it is equitable for the court to put the parties in the position they would have occupied except for the breach of trust."
Id., at 429. Based upon testimony and other evidence presented to the Court, Judge Watson concluded that although Mr. King's analysis of the trust portfolio was, of necessity, retrospective, it was not based entirely on hindsight, as the trustee Bank alleged. The court said:
 "The defendant sought through cross-examination and argument to demonstrate that Mr. King's evaluation and conclusions were merely the result of an exercise in hindsight. The defendant's position was that the theoretic results achieved were arrived at by a selective process rather than a comprehensive one. This Court has carefully considered that contention being aware of the dangers of basing a conclusion of negligence or wrongdoing on the mere fact of a mishap or poor result. Indeed, the jury (now considered advisory) was instructed that the defendant was not to be considered a guarantor of returns and successful investment and that the mere fact of a loss or decreased earnings alone authorized no recovery. (TR-870) This Court considering the pitfall of hindsight nonetheless is reasonably satisfied that the opinions expressed by Mr. King, while benefited by the history of the portfolio, were not conclusions based solely on hindsight. Rather, Mr. King attempted to determine just how the defendant bank had evaluated the state of the economy, market fluctuations and desirable investments at given intervals during the period that the trust estate was administered. (RT 136-137) Mr. King's analysis of the defendant bank's economic forecast was based upon his review of literature prepared and disseminated by the defendant bank to other trust customers. [Emphasis by the court]. It is not unreasonable to presume that the knowledge possessed by the defendant bank and employed with regard to the administration of other trust accounts was equally available and capable of being employed by the defendant bank in connection with the administration of the Spragins trust account. To hold otherwise would be to hold that these beneficiaries *Page 966 
were not entitled to the full benefit of the bank's expertise in connection with the management of their trust estate."
Mr. King's approach, the court said, was one of fiscally sound, conservative, active management of the trust estate. His alternative to the Bank's investment in First Alabama Bancshares was to concentrate the assets in the Standard and Poor's 500 index and in fixed income treasury bills. Although the Bank argues strenuously that Mr. King's approach was speculative and mere hindsight, the trial court had substantial evidence upon which to base its conclusion that King's approach was a responsible investment alternative to the Bank's management method. Indeed, the Bank's investment approach appears to have been based upon the assumption that, at all times during its tenure as trustee, First Alabama Bancshares represented the best possible investment of the trust property. More than sufficient evidence supports the circuit court's finding that the Bank's continued investment of 70 to 75% of the trust assets in bank stock was not in the best interest of the beneficiaries, and that damage to the trust, as a result of the Bank's breach of its duty of loyalty as trustee, constituted a compensable loss.
The court arrived at its assessment of damages suffered by the trust by calculating the "differences in the principal values of the prudently and imprudently managed estates and the income earned on each estate, taking into consideration trust distributions." Specifically, the court found that prudent management of the trust property would have resulted in a principal value of $1,234,108.00 plus earned income of $455,076.00. By contrast, the trust property, as managed by the Bank, had appreciated from $536,000.00 in March 1974, to $776,168.00 by 1983, plus $227,456.00 in earned income.
The court also assessed interest of $79,224.00 against the Bank, an assessment which, the Bank argues, was erroneously awarded on an "unliquidated sum from an arbitrary day," in violation of the recognized standard. The trial court held that because two years had elapsed since the first judgment in this case, interest should accrue from February 6, 1984, the date of the initial judgment in favor of the Spraginses, through January 15, 1986, the date of Judge Watson's second judgment; a total of $79,224.00. This was proper, the court concluded, in order "to adequately compensate the Trust Estate for the total damages suffered." The Bank contends that the rule for awarding prejudgment interest requires that the principal be certain or be ascertainable. Wood v. Central Bank of the South,435 So.2d 1287 (Ala.Civ.App. 1982). The Bank argues that the amount allegedly due was not made certain until the January 15, 1986, judgment of the trial court; that until January 15, 1986, the date from which interest was to accrue was unknown; and that the amount due and the time of payment was unknown until January 15, 1986. For these reasons, the Bank argues that the trial court's award of prejudgment interest was reversible error.
We have previously held that:
 "The rate and amount of interest is a matter in the sound discretion of the court to be determined by the circumstances of each case and should, at a minimum, restore to the beneficiaries the income they otherwise would have received. Pennsylvania Co. v. Wilmington Trust Co., 41 Del. Ch. 153, 189 A.2d 679 (1963)."
First Alabama Bank of Montgomery, N.A. v. Martin, 425 So.2d 415
(Ala. 1982). We allowed the trial judge to consider the prior jury verdict in this case as that of an advisory jury; however, he was not bound by the amount of damages awarded in the first trial. After having considered all of the testimony and other evidence presented, the trial judge determined that interest should accrue on the award of $685,560.00 from the date the final judgment was entered in the first trial, February 6, 1984. The court elected to base its assessment of interest on a simple rate of six percent rather than compound the interest due. Again, the significance of the award of $79,224.00 in interest is that this amount was determined by the court to be the *Page 967 
amount necessary to adequately compensate the trust through January 15, 1986. We cannot conclude that the court committed reversible error, as the appellant argues.
Our review of a case tried ore tenus is guided by the principles that findings of fact are presumed correct and that a judgment based upon such findings "will not be disturbed on appeal if supported by evidence or any reasonable inferences therefrom, unless they are plainly and palpably erroneous or manifestly unjust." Bettis v. Bettis, 475 So.2d 847 (Ala. 1985). The circuit court had substantial evidence of breach of trust by the trustee Bank and of a compensable loss to the trust resulting from that breach. Although other investment alternatives may have produced a different assessment of damages, the evidence relied upon by the court in support of the King alternative is not plainly and palpably wrong or manifestly unjust.
The judgment is, therefore, affirmed.
AFFIRMED.
MADDOX, JONES and SHORES, JJ., concur.
STEAGALL, J., concurs in the result.
TORBERT, C.J., dissents.
BEATTY and HOUSTON, JJ., are recused.
ALMON, J., not sitting.
[1] The report at 475 So.2d 512 (Ala. 1985), incorrectly indicated that this case was tried by Judge John D. Snodgrass. It was tried by Judge S.A. Watson.