William Slovik ("Slovik") appeals from a purported judgment of the Tallapoosa Circuit Court awarding Prime Healthcare Corporation ("Prime Healthcare") $5,282 in damages for Slovik's alleged breach of a promise to pay his stepfather's nursing-home care from his stepfather's Social Security income.
In 1994, Slovik's stepfather entered a nursing home owned by Prime Healthcare and operated under the name "Dadeville Convalescent Home." The stepfather remained in the Dadeville Convalescent Home until his death some time after January 15, 1999, the date Slovik and his stepfather filed their complaint in this matter, but before the trial of this matter on January 29, 2001. From September 1994 through December 1998 the Alabama Medicaid Agency ("Medicaid") paid the Dadeville Convalescent Home a portion of the cost of the care it provided Slovik's stepfather. During this period, the remainder of the cost of Slovik's stepfather's care came from Social Security retirement benefits received by Slovik on behalf of the stepfather.
On January 7, 1998, Medicaid notified Slovik and his stepfather that it had allegedly overpaid by $6,482 for the stepfather's nursing-home care in 1997. Medicaid requested that the stepfather reimburse the agency for the alleged overpayment. Slovik's stepfather requested an administrative hearing regarding Medicaid's claim and a hearing was held before an administrative hearing officer.
On August 12, 1998, the administrative hearing officer rendered a decision against Slovik's stepfather, concluding that the stepfather owed Medicaid $6,482. Slovik's stepfather filed an administrative appeal of the hearing officer's decision; that appeal was not successful. On December 21, 1998, Medicaid notified Slovik's stepfather that he would be disqualified for Medicaid benefits effective December 31, 1998, for a period of at least one year and thereafter until he repaid the $6,482.
During 1998, while the stepfather's dispute with Medicaid was pending, Medicaid allegedly informed Slovik and his stepfather that the amount the stepfather was responsible for paying for his nursing-home care had increased. However, Slovik, who was the Social Security "personal *Page 1056 
representative" for his stepfather and who apparently handled the stepfather's financial matters, allegedly refused to make payments at the increased rate.
Some time during 1998, Prime Healthcare sued Slovik in the District Court of Tallapoosa County.[1] Although the record from that district court action is not included in the record on appeal, Prime Healthcare apparently asserted that Slovik had breached an alleged agreement between Slovik and Prime Healthcare to be personally responsible for paying from his stepfather's Social Security income (over which Slovik exercised control) that portion of the cost of his stepfather's care not paid by Medicaid. In December 1998 the district court entered a judgment in favor of Prime Healthcare and against Slovik. The district court amended its judgment in January 1999.
On December 30, 1998, Prime Healthcare issued a 30-day discharge notice to Slovik and his stepfather, notifying Slovik that it planned to discharge the stepfather from the Dadeville Convalescent Home on February 1, 1999, for allegedly failing to pay $6,833 for nursing-home care. The notice also informed Slovik and his stepfather of the stepfather's right to appeal this decision to the State Department of Public Health.
On January 15, 1999, Slovik and his stepfather filed a complaint in the Tallapoosa Circuit Court against Medicaid and Prime Healthcare. In their complaint, Slovik and his stepfather appealed from the district court's judgment in favor of Prime Healthcare and requested that the circuit court review Medicaid's decision regarding that agency's $6,482 reimbursement claim. Slovik also interpleaded the sum of $6,033 and requested that the court decide who was entitled to those funds. Slovik and his stepfather also alleged that Medicaid and Prime Healthcare had conspired to evict the stepfather from the Dadeville Convalescent Home; they alleged that that eviction constituted a taking of the stepfather's property without due process of law and that it violated the stepfather's rights under the United States Constitution and under 42 U.S.C. § 1983
et seq.
Soon after Slovik's complaint was filed, the circuit court issued an order stating that it lacked subject-matter jurisdiction over Slovik's and his stepfather's eviction claim. On April 13, 1999, Slovik and his stepfather requested that the circuit court pay the interpleaded funds to Medicaid pursuant to a settlement agreement. On April 28, 1999, the circuit court entered an order directing that the interpleaded funds be paid to Medicaid.
After an ore tenus hearing in January 2001, the circuit court entered a judgment against Slovik on Prime Healthcare's claim that Slovik had promised to be personally responsible for making payments to Prime Healthcare from his stepfather's Social Security income. The circuit court specifically determined that Slovik "was a party to the original promise to pay [Prime Healthcare], not a promise of guarantee, and, therefore, said promise is not within the statute of frauds and does not require a written document" and entered a judgment against Slovik in the amount of $5,282. After the circuit court denied a postjudgment motion filed by Slovik, he appealed. *Page 1057 
On appeal, Slovik argues that he did not assume any personal contractual obligation to pay his stepfather's alleged debt to Prime Healthcare and that the Statute of Frauds requires that any agreement he may have made to pay the debt of his stepfather be in writing. As to the latter argument, Slovik correctly notes that the Statute of Frauds requires, in pertinent part, that "[e]very special promise to answer for the debt, default or miscarriage of another" must be in writing. Ala. Code 1975, § 8-9-2(3). However, Prime Healthcare did not argue at trial that Slovik was liable for the alleged debt of another and specifically asserted that it was not attempting to collect the stepfather's debt from Slovik as a guarantor.[2] Instead, Prime Healthcare argued that Slovik had agreed to be personally responsible each month for forwarding a portion of his stepfather's Social Security income, over which Slovik had control, to Prime Healthcare to pay for part of the cost of the stepfather's nursing-home care and that Slovik had failed to forward the agreed-upon funds to Prime Healthcare. As a result, Prime Healthcare argued that Slovik was liable for damages resulting from his failure to do so. Because Prime Healthcare's theory of recovery is premised upon an alleged agreement by Slovik as a primary obligor, rather than as a guarantor of his stepfather's performance, Slovik's argument that his purported obligation to Prime Healthcare was in the nature of a guaranty agreement governed by the Statute of Frauds is without merit.
We turn then to Slovik's argument that he did not assume any personal contractual obligation in connection with the payment of his stepfather's alleged debt to Prime Healthcare. We first note that, in addition to documentary evidence, the circuit court heard evidence ore tenus and made findings of fact based on that evidence. Under the ore tenus standard of review, the trial court's findings of fact are presumed correct and "we must accept as true the facts found by the trial court if there is substantial evidence to support the trial court's findings." Beasley v.Mellon Fin. Servs. Corp., 569 So.2d 389, 393 (Ala. 1990). See also,e.g., First Alabama Bank of Huntsville, N.A. v. Spraggins, 515 So.2d 962
(Ala. 1987).
"The basic elements of a contract are an offer and an acceptance, consideration, and mutual assent to the essential terms of the agreement." Hargrove v. Tree of Life Christian Day Care Ctr.,699 So.2d 1242, 1247 (Ala. 1997). "In order to recover for breach of agreement, the plaintiff has the burden of showing that an agreement existed; that defendant breached that agreement; and that plaintiff was damaged by the breach." Cocke v. Odom, 385 So.2d 1321, 1322
(Ala.Civ.App. 1980).
We note that the only document Prime Healthcare introduced into evidence that might have evidenced an agreement between it and Slovik was instead introduced solely for the limited purpose of proving that Slovik had executed a document as his stepfather's "personal representative." That document, Plaintiff's Exhibit 1, appears to have been compiled from two separate documents. The first two pages of Plaintiff's Exhibit 1 are an unsigned letter from Medicaid to Slovik's stepfather (in care of Slovik) regarding the deficiency amount Medicaid claimed that Slovik's *Page 1058 
stepfather owed Medicaid. The remaining pages of Plaintiff's Exhibit 1 are apparently the last two pages of a document executed by Slovik, as the stepfather's "personal representative," and by the Dadeville Convalescent Home's nursing administrator, on October 14, 1997.
An office manager for Prime Healthcare testified regarding Plaintiff's Exhibit 1:
 "Q: Do you have any contract whereby he promised to pay you money?
 "A: No, I don't have a contract that specifically states that, but he did sign as sponsor.
"Q: Who with?
"A: And to be responsible.
". . . .
 "Q: Who did he sign as sponsor with? It was with the Medicaid agency, was it not?
 "A: Well, with Dadeville Convalescent Home. And I'm not sure exactly what he signed with Medicaid.
 "Q: He signed with Dadeville Convalescent Home. This Exhibit Number 1, is this it?
"A: I'm not really the person that should answer that.
". . . .
"Q: He's the sponsor, right?
"A: Personal representative.
 "Q: Personal representative. It doesn't say `sponsor.' It says `personal representative.' . . . And who is this with?
"A: It says `Dadeville Convalescent Home.'
"Q: And that's in 1997; is that correct?
"A: Um-hum.
". . . .
 "Q: I'm asking you is there any contract, any written contract to back up this complaint that you have filed suit on? . . . Is there any document that you can show me where there is an agreement by Mr. Slovik to pay Prime Healthcare anything?
 "A: I assume that that is the — That is one of those kinds of documents.
"Q: Anything other than this?
"A: Not to my knowledge.
 "Q: Okay. So you're relying totally on page four of Plaintiff's Exhibit 1 for the basis of him owing you money?
 "A: Not to my knowledge. Ms. Jo Brand may be able to indicate that there is something else, but not to my knowledge."
The office manager was the only witness who testified on behalf of Prime Healthcare; the record contains no testimony from a witness by the name of Jo Brand. The only other witness at the trial was Slovik, who admitted only that his signature appeared on page 4 of Plaintiff's Exhibit 1 as "personal representative."
The Alabama Supreme Court has stated that "absent an admission by the defendant of the existence, execution, and content of [a] written agreement, a written contract sued upon must be put into evidence."Alabama Life Disability Ins. Guar. Ass'n v. Trentham, 543 So.2d 195,196 (Ala. 1989). As noted above, the contents of Plaintiff's Exhibit 1 were introduced into evidence only for the purpose of proving that Slovik had executed a document as his stepfather's "personal representative." The contents of that document were not admitted into evidence for the purpose of showing the terms of a contract. Further, Slovik did not make any "admission" regarding the contents of the document.
The circuit court, however, apparently found that there was an oral agreement between Slovik and Prime *Page 1059 
Healthcare. In so doing, the trial court based its judgment on a finding that Slovik "was a party to the original promise to pay [Prime Healthcare] . . . and . . . [that] said promise [was] not within the statute of frauds and [did] not require a written document." (Emphasis added.)
In addition to her testimony discussed above, the office manager for Prime Healthcare also testified:
 "Q: And tell us why it is from whatever you got from Medicaid or in your record or whatever, that [Slovik] owes that money?
". . . .
 "A: Because [Slovik] had charge of [his stepfather's] Social Security check.
"Q: [The stepfather's] money?
". . . .
"A: Yes."
Slovik argues on appeal that there is insufficient evidence to support the trial court's finding that he agreed to "make his own debt" to Prime Healthcare. On the record presented in this case, we must agree. Based on our review of that record, we do not find that it contains "substantial evidence" to support the trial court's finding that Slovik "was a party to the original promise to pay [Prime Healthcare]."
The circuit court's judgment against Slovik in the amount of $5,282 is reversed, and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
YATES, P.J., and CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.
[1] Prime Healthcare initially filed the action in the name of Dadeville Convalescent Home, one of several names under which Prime Healthcare did business. After the district court action was appealed to the circuit court for a trial de novo, Prime Healthcare amended its complaint to clarify that the proper name of the plaintiff was "Prime Healthcare" and that it did business as "Dadeville Convalescent Home."
[2] Prime Healthcare stated that Medicaid's regulations prohibited it from requiring Slovik to guarantee his stepfather's obligation to them. We note that Ala. Admin. Code r. 560-X-10-.02, states, in pertinent part:
 "(9) Nursing facilities must not require a third party guarantee of payment to the facility as a condition of admission, or expedited admission, or continued stay in the facility."